(No. 46679.—

JOHN BONER *et al.*, Appellees, v. NOLAN B. JONES, Director of Personnel.—(Illinois State Employees Association *et al.*, Appellants.)

*Opinion filed March 24, 1975.*

James M. Drake, of Springfield, for appellants.

Nelson Howarth, of Springfield, for appellee Michael J. Howlett.

Herman G. Bodewes, of Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, and Thomas F. Londrigan, of Londrigan, Potter & Billington, both of Springfield, for other appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case is concerned with events that took place after the death of Paul Powell, a Democrat, who was Secretary of State of Illinois. He died in October of 1970, and later that month the then Governor of Illinois, Richard B. Ogilvie, appointed John W. Lewis, a Republican, as Secretary of State to fill the unexpired term of Paul Powell. Thereafter, between October 13, 1971, and April 1, 1972, approximately 2,000 non-civil-service employees in the office of the Secretary of State were discharged. No cause was stated for these discharges, but the persons summarily discharged were Democrats who had been appointed to their positions by Powell. During the same period approximately the same number of Republicans were then hired to replace the Democratic employees who had been discharged.

On January 22, 1971, the Illinois State Employees Union and 19 former employees in the office of the Secretary of State, who sued in their own behalf and in

behalf of all others similarly situated, brought an action in the United States District Court for the Southern District of Illinois against John W. Lewis, individually and as Secretary of State of the State of Illinois. The relief sought was a declaratory judgment holding that the conduct of the defendant "violates the due process, equal protection and freedom of speech and assembly guarantees of Title 42 United States Code Section 1983 and the First and Fourteenth Amendments to the Constitution of the United States." The plaintiffs also sought an order directing the defendant to reinstate the individual plaintiffs and an injunction restraining him from terminating the employment of other employees without a hearing and from discriminating against employees because of their membership or nonmembership in any political party. The plaintiffs also sought to be made whole for loss of income and other damages incurred by reason of the allegedly unlawful acts of the defendant.

The district court entered a summary judgment in favor of the defendant, but this judgment was reversed by the court of appeals, which held "that the district court committed error when he entered judgment for the defendant. The record does not support a factual finding that no plaintiff was dismissed for an impermissible reason or the legal conclusion that defendant was justified in prescribing active support of the Republican Party as a condition of continued public employment." The judgment of the court of appeals was entered on September 18, 1972. *Illinois State Employees Union, Council 34 v. Lewis* (7th Cir. 1972), 473 F.2d 561, *cert. denied,* 410 U.S. 928 and 943, 35 L. Ed. 2d 590 and 609, 93 S. Ct. 1364 and 1370.

Thereafter, on November 30, 1972, the present action was filed in the circuit court of Sangamon County. The plaintiffs in this action are several former employees in the office of the Secretary of State who allege that they were discharged by the defendant, Alan A. Drazek, Director of

the Department of Personnel, "because of their political affiliation with the Democratic Party and because they refused to become Republicans or support the Republican Party," and that their positions were filled by Republican patronage appointees. The complaint further alleges that on February 16, 1972, John W. Lewis, Secretary of State, acting under section 4b of the Personnel Code (Ill. Rev. Stat. 1971, ch. 127, par. 63b104b), requested the Governor to extend the provisions of the Code to certain positions in the office of the Secretary of State. The Governor approved, and the defendant Drazek issued a rule by which the provisions of the Code were so extended as of April 1, 1972.

The complaint further alleges that the discharge of the plaintiffs and the other Democratic employees on political grounds violated their constitutional rights under the first and fourteenth amendments to the Constitution of the United States; that examinations which did not comply with the provisions of the statute were given to the political patronage employees appointed to the positions formerly held by the plaintiffs, and that those replacement employees began the service of their probationary periods. It also alleges that the acts described in the complaint are an unconstitutional encroachment upon the office of Secretary of State by the Governor. The complaint prays for an injunction restraining Drazek as Director of the Department of Personnel from certifying any probationary employees under the Personnel Code and asks that the court hold section 4b of the Personnel Code unconstitutional, or, in the alternative, hold that the actions of the defendant violated the provisions of the Personnel Code. A second count of the complaint was filed in behalf of Terry R. David, who alleges that he is qualified for and desirous of employment in the office of the Secretary of State and reiterates the paragraphs of the first count.

The Illinois State Employees Association and certain named employees who had been appointed by the defend-

ant Drazek sought and were granted leave to intervene on behalf of all members of the Illinois State Employees Association employed by the Secretary of State and entitled to certification under the Personnel Code. These intervenors filed a motion to dismiss the complaint. They also filed a counterclaim for a writ of *mandamus* commanding the Director of Personnel to send notice of their status as certified employees under the Code to the intervening petitioners. Thereafter, upon consideration of affidavits, a temporary injunction was granted as prayed in the complaint, and on appeal that order was affirmed by this court in *Boner v. Drazek,* 55 Ill.2d 279, on October 1, 1973.

After the cause had been remanded to the circuit court, Nolan B. Jones, the present Director of Personnel, was substituted as defendant in lieu of the former Director, Alan A. Drazek. In addition, Michael J. Howlett, who took office as Secretary of State in January of 1973, was granted leave to intervene. His intervening petition challenged the validity of section 4b of the Personnel Code and also alleged that the examinations given to the replacement employees were not examinations designed to establish a system of personnel administration, but rather were purported examinations designed to give an appearance of validity to examinations improperly conducted and improperly scored in order to grant civil service status to political patronage employees. Interrogatories were submitted to Alan Drazek and others, and affidavits were filed. After considering the interrogatories and their answers and the affidavits, the court granted the motion for summary judgment and entered a permanent injunction restraining the defendant Jones from certifying the replacement employees or notifying them of their certification.

The judgment of the trial court was based upon alternative grounds, the first of which was that section 4b of the Personnel Code (Ill. Rev. Stat. 1971, ch. 127, par.

63b104b) is invalid because it "constitute[s] encroachment upon the independent constitutional executive authority of the Secretary of State and infringement by the Governor upon the constitutional independence granted the Secretary of State in violation of Art. 2, Sec. 1, and Art. 5, Sec. 1 of the Illinois Constitution."

The Personnel Code deals with the classification and pay of State employees, their merit and fitness, and the conditions of their employment. Numerous positions are normally exempt from the Code, including all positions in the office of the Secretary of State (Ill. Rev. Stat. 1971, ch. 127, par. 63b104c). The provision of the Code that is attacked in this case is section 4b, which provides a method by which the Code may be made applicable to positions in those offices otherwise exempt. That section provides that the officer legally charged with control over appointments may request in writing to the Governor the extension of the provisions of the Code to a named group of employees. If the Governor concurs, he may forward the request to the Director of Personnel, who shall survey the practicability of the request, approve or disapprove it, and notify the Civil Service Commission of his decision. If he approves, he is to submit rules to accomplish the extension to the Civil Service Commission. Such an extension of jurisdiction of the Department of Personnel may be terminated at any time after four years from its original effective date by the same process of amendment to the rules.

It is difficult to understand the contention that section 4b somehow involves an unconstitutional "infringement by the Governor upon the constitutional independence" of the Secretary of State with respect to the hiring of employees in his office. The extension of the Code that is involved in this case was not the result of infringement by the Governor. It took place because it was requested by John W. Lewis, the then Secretary of State, and the provisions governing the extension, its scope,

duration and method of termination remain today as they were when the extension was requested.

It is said also that section 4b "amounts to a legislative encroachment upon the doctrine of the separation of powers; i.e., upon the executive authority of the Secretary of State." This position, too, is untenable.

Under the Constitution the Secretary of State is the keeper of the Great Seal of the State, and he is to maintain the official records of the acts of the General Assembly and such official records of the executive branch as provided by law. (Ill. Const. (1970), art. V, sec. 16.) All of the other duties of the Secretary of State are prescribed by the General Assembly.

The contentions here advanced were rejected long ago in *People ex rel. Gullett v. McCullough* (1912), 254 Ill. 9, when an earlier statute which brought certain positions in the office of the Secretary of State under the Civil Service Commission was similarly challenged on constitutional grounds. Extensive quotation from the decision in the *McCullough* case is unnecessary. The holding of the case was succinctly stated at the outset of the dissenting opinion of Mr. Justice Vickers:

> "***Stripped of all unnecessary verbiage, the sole question to be determined is whether the legislature has the power, under the constitution, to take from the executive officers of the State the power to appoint such assistants and subordinates as are necessary to enable them to discharge the duties required of such officers under the constitution and laws of the State. To this question the majority opinion gives an affirmative answer, and it is from that conclusion that I desire to dissent." (254 Ill. 9, 29-30.)

The *McCullough* case has been adhered to over the intervening years (see *People ex rel. Vanderburg v. Brady* (1916), 275 Ill. 261), and the Constitution of 1970 contains no provision which would impair its authority.

The second ground upon which the judgment was based was stated by the trial court in these terms:

"In the alternative, if this court erred in declaring the said Statute unconstitutional, the court finds that the qualifying examinations administered by the Department of Personnel for the positions in the Secretary of State herein involved are contrary to and violations of the provisions of 4b of the Personnel Code and, null and void. Section 4b of the Personnel Code provides in Sub-Par. (5):

'Such qualifying examinations shall be of the same kind as those required for entrance examinations for comparable positions.'

The ultimate and undisputed facts are that all 'cutting scores' established for qualifying examinations were determined only after the examination had been given to the various applicants and, after the results from these examinations had been compiled. The 'cutting scores' were measurably in most instances as much as fifty per cent or more, lower than the 'cutting scores' in competitive examinations. The defendants acknowledge the measurable reduction in 'cutting scores' but, explains this act by statements to the effect that the 'cutting scores' were established because of the pressure that was upon the current employees in that they were being tested to retain their positions of employment rather than to obtain a new position. This explanation is weak in nature but, assuming it true, it does not vitiate the failure to comply with the law. If this court were to accept the explanation the court would in effect condone a violation of the Act."

As the trial judge pointed out, section 4b requires that, when the provisions of the Code are extended, "qualifying examinations shall be of the same kind as

those required for entrance examinations for comparable positions." (Ill. Rev. Stat. 1971, ch. 127, par. 63b104b.) The appellants would avoid the contention that this provision was not complied with by the following interpretation of it:

> "We submit it simply means he cannot give clerks, stenographers, or license examiners *competitive* exams based on education, tests of capacity and tests of knowledge, and *qualifying* exams based on experience and tests of physical fitness."

We cannot agree with this contention, and indeed we find it difficult to believe that it is seriously advanced. Of course, the grading process is an essential part of any examination, and the statute cannot be read, in our opinion, to mean that two identical examinations are "of the same kind" when one is graded with a passing score of 67 and the other with a passing score of 28.

The record shows that there were 1,758 employees who took qualifying examinations for what are described as "similar positions"—meaning positions involving qualifications, duties and responsibilities similar to those previously established by the Department of Personnel for other departments and agencies of the State. In the case of the similar employees the same examinations were given to those seeking to qualify for positions in the office of the Secretary of State, but while the cutting scores for other agencies were determined and established before the examinations were administered, the cutting scores for those seeking certification in the office of the Secretary of State were determined after the examination had been given and the results had been compiled.

"Dissimilar positions" are those which are peculiar to the office of the Secretary of State. Examinations were devised for those positions, but the cutting scores applied to the personnel in question in this case were substantially lower than the cutting scores for open competitive examinations subsequently designed for those positions.

These differences were sought to be justified on the grounds that the replacement examinees were older than other examinees, that their "mean (average)" [*sic*] test score was lower, and that they were "under abnormal pressure compared to the typical open competitive applicants. The Secretary of State's applicants' future, so to speak, depended on whether they passed the test or not." In addition, it was pointed out that in these examinations it was unnecessary to rank the applicants according to their ability.

We agree with the trial judge that these explanations are weak, and they do not justify the failure to comply more closely with the statute. We do not agree, however, that it necessarily follows that the entire process involving the extension of the Code to the office of the Secretary of State is therefore void. Rather, we think it is appropriate for a court of equity to fashion its remedy in a manner more in keeping with the rights and expectations of the individuals whose lives will be affected by its decision.

From the point of view of those persons, the examination which they took was legal. It is true that the files of at least 1,688 of them contain documentary evidence of Republican sponsorship before they were employed. On the other hand, it does not appear that those employees whom they replaced had not themselves furnished evidence of Democratic sponsorship as a prerequisite to obtaining or retaining the positions from which they were discharged. As the Supreme Court of Pennsylvania has pointed out, there is an element of estoppel operating in such a situation: "Those who, figuratively speaking, live by the political sword must be prepared to die by the political sword." *American Federation of State, County and Municipal Employees v. Shapp* (1971), 443 Pa. 527, 536, 280 A.2d 375, 378.

In our opinion, the appropriate disposition in this unique situation involves an examination by the trial court to determine the score of each of the replacement

employees upon the qualifying examination. Those scores, the record shows, remain on file in the office of the Department of Personnel. Any employee whose score exceeded the cutting score on examinations given for similar positions, or exceeded the cutting score upon subsequent open competitive examinations in the case of dissimilar positions, and who has satisfactorily completed his probationary period, shall be certified in accordance with section 4b. As to other employees, the judgment of the circuit court of Sangamon County is affirmed.

*Affirmed in part, and reversed in part,*
*and remanded, with directions.*