WILLIAM MACAITIS et al., Plaintiffs-Appellants, v. CIVIL SERVICE BOARD
OF THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO
et al., Defendants-Appellees.—(ROSS W. DRING et al., Intervenors-Defendants-
Appellees.)

First District (4th Division)   No. 77-370

Opinion filed March 23, 1978.

Vincent J. Getzendanner, Jr., of Chicago, for appellants.

Allen S. Lavin, of Chicago, for appellees.

Richard F. McPartlin, of Chicago, for intervenors-appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal of an order entered on March 10, 1977, by the circuit court of Cook County dismissing a declaratory judgment action instituted by William Macaitis, Frank Kudrna and Andrew Kowalski (hereinafter called "plaintiffs"), against the Civil Service Board of the Metropolitan Sanitary District of Greater Chicago (hereinafter called "the Board") and the Director of Personnel (hereinafter called "the Director") of the Metropolitan Sanitary District of Greater Chicago, seeking to void a civil service examination for the position of supervising civil engineer, for which the plaintiffs did not receive passing grades. A separate count of plaintiffs' complaint was brought under the Administrative Review Act.

The issues presented for review are whether the Board has the power and authority to adjudicate the validity of an examination issued by the Director and whether the examination in question was so arbitrary, unfair and unreasonable as to render it invalid.

The plaintiffs are all temporary supervising civil engineers employed by the Metropolitan Sanitary District of Greater Chicago (hereinafter called "the District") who were not accorded passing grades on a promotional examination for permanent appointment to the position of supervising civil engineer.

Macaitis has been employed by the District since 1969 and has been the temporary supervising civil engineer in charge of planning since June of 1974. Kudrna has been an employee of the District since 1968 and has been temporary supervising civil engineer in charge of flood control since June of 1974; prior to that he was supervising civil engineer of planning from August, 1972 until May 1974. Kowalski has been employed by the District since 1962 and has been temporary supervising civil engineer in charge of construction since March 1972.

Defendants are the Board, the Director and Ross W. Dring, J. Edward Knowles, Thomas M. Edwards, Robert M. Eldon and Walter J. Weaver (hereinafter called "Intervenors") who took and received passing grades on the promotional examination in question.

The notice of the holding of the promotional examination for supervising civil engineer was issued by the Director on September 23, 1975. This notice stated, among other things, the exam would be divided

and weighted as follows: a rating of training and experience, 20 percent; a written test, 20 percent; an oral test, 50 percent; a rating of seniority, 5 percent; and a rating of efficiency, 5 percent. It further stated it would be necessary to achieve a passing score on each test to be eligible to take the subsequent test. This form of testing is commonly known as truncated testing. A passing score was defined as 70 percent or such other percentage as the Director in his discretion would determine.

Plaintiffs all submitted written applications to take the exam and were found to have the necessary qualifications to be admitted to the exam by the Director. On November 1, 1975, plaintiffs took the first two portions of the exam, consisting of filling out a training and experience questionnaire and taking a written test consisting of 150 multiple choice questions. By letter dated December 4, 1975, Macaitis was advised he had not achieved a passing score on the rating of training and experience and was therefore ineligible to participate in subsequent tests. Consequently, his written test would not be graded. By letter of the same date, Kudrna and Kowalski were advised by Rol Jeske, chief of the examination development section of the department of personnel, that they had not achieved a passing score on the written test portion of the exam and were therefore ineligible to participate in subsequent tests.

Prior to receiving their grades, Kudrna and Kowalski had made complaints to the chief examiner, Jeske, and a staff member. Upon notification of their grades, plaintiffs renewed their objections to the test by both written and oral complaints to the Director. The plaintiffs advised the Director the training and experience portion of the test (hereinafter called "T and E") was unfairly and improperly designed in that it did not consider the competency of the individual completing it, and the exam as a whole was arbitrary and capricious and bore no relationship to the purpose for which it was designed; namely, testing the qualifications of an individual to be a supervising civil engineer. The Director refused to void the examination, and his sole response to the plaintiffs was "he, as Director of Personnel, could put a crossword puzzle on the exam and make it stick."

Plaintiffs appealed to the Board. From December of 1975 through August of 1976, the Board held several hearings, and in August 1976, it issued its finding upholding plaintiffs' charges and concurring in their conclusion the examination was "unfair." However, apparently under the restraint of a prior ruling of the circuit court of Cook County, the Board further found it had no jurisdiction under the law to void the exam and therefore denied plaintiffs relief.

On September 1, 1976, plaintiffs filed a verified complaint under the Administrative Review Act to review the decision of the Board, charging, among other things, the Board did have jurisdiction to void the exam; the

"T and E" portion of the exam was unfair and was arbitrarily used to disqualify individuals who were eligible under the personnel rules to take the exam; and the written portion of the exam bore no direct or reasonable relationship to the type of work involved in the position of supervising civil engineer, rendering the exam an arbitrary and unfair test of the relative capacity of the persons examined to perform the duties of the position. Plaintiffs requested the court to issue a temporary restraining order enjoining the Director from posting the exam grades and from making any appointment to the position of supervising civil engineer pending the disposition of their suit. Plaintiffs further requested the court find the Board had jurisdiction over the exam and either enter judgment affirming its findings or remand the cause to the Board with instructions to enter appropriate findings.

On September 2, 1976, Judge Raymond K. Berg entered a preliminary injunction enjoining the Director from "Posting the grades of the examination for Supervising Civil Engineer or from making any certification of appointments to such position." On September 9, 1976, the intervenors were permitted to intervene in the suit. Subsequently, on October 26, 1976, Judge Berg, without passing on the factual sufficiency of the Board's findings relating to the unfairness of the exam, entered an order dismissing plaintiffs' complaint under the Administrative Review Act on the grounds that the Board had no jurisdiction to void the exam. This is the first of the two orders of the circuit court from which this appeal is taken.

Prior to the trial court's ruling on the complaint under the Administrative Review Act, plaintiffs filed an amended complaint (designated as count II) under the Declaratory Judgment Act alleging an actual justiciable controversy existed between the parties involving the construction of the applicable statutory provisions and rules of the District. The amended complaint repeated in essence the charges made in the complaint under the Administrative Review Act, and made further allegations.

Following answers filed by all defendants, and stipulations of fact among the parties, the cause was tried before Judge Richard L. Curry on March of 1977. In addition to documentary evidence, plaintiffs' case consisted of their own testimony; the testimony of their immediate supervisor, Frank Dalton; the testimony of Ernest Bennett, who prepared certain questions on the written test; the testimony of Ronald Huston, the #2 man in the Department of Personnel; and the testimony of Rol Jeske, the #3 man in the Department of Personnel, and the individual who was responsible for the overall preparation and presentation of the exam.

Mr. Jeske, called as an adverse witness, testified he had no engineering background, but subject to the approval of the Director, he prepared and

created the exam. He stated a supervising engineer is the top civil service position of five engineering positions. He testified, in the notice of the exam, the minimum qualifications for the position of supervising civil engineer were stated, and in the case of the promotional exam, the requirement was one year at the next lowest level. He further testified the purpose of the application was to permit the District to determine if the minimum qualifications were present, and when the exams were accepted, it meant the individuals had the minimum qualifications to take the exam.

He stated he had recommended the exam be truncated, and a passing score would be 70 percent for each test, except if the Director in his discretion determined otherwise. He explained he recommended the truncated exam for purely administrative reasons in that as each stage of the test was taken, it made less work for the examiner to administer and grade the remaining portions of the exam because there were fewer candidates.

He stated the purpose of the "T and E" portion of the exam was to quantify the level and length of an individual's experience in civil engineering, conceding, "you can't rate quality on a Training and Experience questionnaire * * * if you mean by quality how well an individual does on a job."

After grading all the scores on the "T and E" form, and ranking them, he determined a passing grade by looking for a "natural break or gap between the scores." A natural break occurred in this exam at about 50 percent, and therefore he made 50 percent the passing score. He stated he graded the forms before the information on them had been verified, and if someone had misstated or puffed his experience or educational background, a different natural break could have resulted.

With respect to the written portion of the exam, he testified 60 questions out of 150 related exclusively to sanitary engineering. With respect to scoring the written exam, 16 of the 150 questions were thrown out because of complaints of candidates.

On cross-examination Mr. Jeske testified Macaitis lost 70.4 points by not having his pre-engineering degree experience counted, and if he had received it, he would have fallen only 8.4 points short of a passing grade.

Ronald Huston, who was also examined as an adverse witness, testified he was the #2 man in the Department of Personnel. He had been with the Department for 23 years, had served as its acting director, had been involved in the testing area, including formulation of exams and grading and currently his primary job is job classification.

He testified he had the responsibility for accepting or rejecting the applications for the examination in question. In response to a hypothetical question he stated in his opinion the "T and E" portion of the exam was

"unfair." When cross-examined by counsel for the District as to whether his opinion would be different when the number of applicants taking the exam was considered, he stated even considering the number of candidates, he still considered the "T and E" portion of the exam unfair.

Frank Dalton testified he was an assistant chief engineer with the District; he had been employed with the District for 14 years; he had been assistant chief engineer since 1964; he had been acting chief engineer for 18 months; and he had more supervising civil engineers under his jurisdiction than any other assistant chief engineer.

He confirmed he had been asked by Mr. Jeske to respond to the proposed weights to be given to the areas designated on the notice of exam and said he had responded by stating: "I don't believe that the written test for this position is a valid test in that it does not test for the traits which are necessary to function as a Supervising Civil Engineer."

Mr. Dalton reviewed the questions on the written exam in court and stated the first 90 questions were civil engineering questions, and were very basic questions, the type he saw immediately after graduating from college. He stated questions 90 to 150 dealt with sanitary engineering and he could not comment on their level of difficulty. He emphasized none of the 150 questions was the kind a supervising civil engineer would face on a day-to-day basis, and they were more appropriate for a first or second level engineer.

Mr. Ernest C. Bennett testified he had been an environmental protection (sanitary) engineer with the Illinois Environmental Protection Agencies since 1965, and within the Agency he held a fourth level position out of six levels. He testified he received a letter from Mr. Jeske asking him to prepare questions on sanitary engineering for the exam, and enclosing material used on the last exam for senior civil engineer. The letter further stated the District wanted questions, "comparable in content and level of difficulty" to those on the lower level exam of senior civil engineer. He said he did not consider a senior civil engineer to be an administrative position, and if he had been told the test was for an administrative position, he would not have formulated the same questions.

William Macaitis testified he had served as a temporary appointee to the position of supervising civil engineer with the District for approximately three years, and he had begun his engineering career in 1963 working for the State of Illinois, Division of Highways, at which time he had not attained his degree but had acquired 157 credit hours in chemical engineering, while normally the number of required hours for a degree is between 120 and 130.

He testified he was hired in May of 1969 by the District as an associate civil engineer (2nd level) without a degree, and at this time the job

prerequisite was two years professional engineering experience, which the District not only gave him credit for, but brought him in at an advanced pay level.

He said that in October 1969 he was promoted to the level of senior civil engineer, which required a minimum of four years prior professional engineering experience, for which the District gave him credit. In August of 1971, he was promoted to principal civil engineer, which had a six-year professional engineering requirement, for which he was credited, and he received his temporary appointment to the level of supervising civil engineer in June of 1974 which required eight years prior professional engineering experience, for which he was credited.

He specifically stated that when he applied to take the exam for supervising civil engineer, he was not aware his pre-engineering experience would not be counted.

After testimony of other witnesses, and at the close of the plaintiffs' case, the defendants moved for a directed finding, contending the plaintiffs did not prove a prima facie case. The trial court sustained the defendants' motion, and on March 10, 1977, entered an order dismissing plaintiffs' amended complaint under the Declaratory Judgment Act and dissolving the preliminary injunction enjoining the Director from making appointments from the list of candidates who had successfully completed the exam. This is the second order from which the plaintiffs have prosecuted this appeal. On March 18, 1977, this appellate court entered a stay of enforcement of the circuit court's order dissolving the injunction and fixed an accelerated briefing schedule.

The statutes involved in this appeal are included in the act creating the Sanitary District of Chicago (hereinafter called "the Act") (Ill. Rev. Stat. 1975, ch. 42, par. 320 *et seq.*).

Section 4.3 of the Act provides, in pertinent part:

"The Director shall, with the consent and approval of said civil service board, classify * * * all offices and places of employment in said sanitary district with reference to the duties thereof for the purpose of establishing grades, and affixing and maintaining standards of examinations hereinafter provided for. * * * The director, subject to the disapproval of the civil service board as hereinafter provided, shall by rule prescribe standards of efficiency for each grade and for examinations of candidates for appointment thereto.* * *" Ill. Rev. Stat. 1975, ch. 42, par. 323.3.

Section 4.5 of the Act provides, in pertinent part:

"The director, subject to the disapproval of the civil service board as hereinafter provided, shall make rules to carry out the purposes of this Act, and for examinations, appointments, transfers and removals* * *. Such rule or any amendment thereof shall take

effect 30 days after written notice thereof is given to the civil service board, unless within such period, the board files with the Director a written notice of its disapproval thereof." Ill. Rev. Stat. 1975, ch. 42, par. 323.5.

Section 4.7 of the Act provides, in pertinent part:

"All applicants for offices or places in said classified civil service * * * shall be subjected to examination, which shall be public and competitive with limitations specified in the rules of the Director as to * * * qualifications to perform the duties of the office or place to be filled, which qualification shall be prescribed in advance of such examination. Such examinations shall be practical in their character, and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the position to which they seek to be appointed* * *. The Director shall control all examinations* * *." Ill. Rev. Stat. 1975, ch. 42, par. 323.7.

The court below dismissed the plaintiffs' complaint for administrative review solely on the basis that the Board had no jurisdiction to review the examination in question. Plaintiffs disagree, and urge this court to find the Board did have jurisdiction to review the actions of the Director and to enter an order setting aside the examination.

The defendants argue, and the Board as well as the circuit court ruled, section 4.7 of the Act, which provides "The Director shall control all examinations * * *," divests from the Board any power to review such examinations.

■■ We hold there is ample statutory authorization granting the Board the power to inspect any examination prepared by the Director and to approve or disapprove of its questions or method of testing. For example, section 4.3 of the Act provides:

"The Director shall, with the consent and approval of said civil service board, classify * * * all offices * * * for the purpose of * * * maintaining standards of examinations* * *." (Ill. Rev. Stat. 1975, ch. 42, par. 323.3.)

Section 4.3 further provides,

"The director, subject to the disapproval of the civil service board * * * shall * * * prescribe standards * * * for examinations of candidates for appointments * * *." (Ill. Rev. Stat. 1975, ch. 42, par. 323.3.)

In addition, section 4.5 of the Act provides,

"The director, subject to the disapproval of the civil service board * * * shall make rules * * * for examinations * * *." Ill. Rev. Stat. 1975, ch. 42, par. 323.5.

The above sections of the Act make it clear the Director's discretion in

issuing hiring and promotional examinations is subject to the disapproval and, hence, approval of the Board. The trial court's holding the Board had no jurisdiction to set aside the examination was in error. Inasmuch as the Board has the broad power to approve or disapprove of the official acts of civil service administrative officers, we find the Board has the authority to screen any exam before it is issued by the Director.

The plaintiffs further claim, but the declaratory judgment count of the complaint, the examination in question was arbitrary, unfair and unreasonable, the Director abused his discretion and this court should invalidate the exam.

It is well established, where an administrative officer has acted arbitrarily or capriciously and has thereby abused his discretion, courts should not hesitate to intervene. *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406; *Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 193 N.E.2d 770.

The defendants agree with the above standard of judicial review and claim the exam in question did test the relative capacities of the candidates to perform the duties of supervising civil engineer, and there was no abuse of discretion on the part of the Director. The court below agreed and entered a directed finding in favor of the defendants.

■■ We appreciate the fact that the duties of the Director in issuing examinations are many, are complex and are varied. However, he has two overriding duties: to make the exam job-related and to allow those qualified to be fully and adequately testied. These duties are imposed upon the Director by section 4.7 of the Act, which provides:

> "Such examinations shall be practical in their character, and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the position to which they seek to be appointed* * *." Ill. Rev. Stat. 1975, ch. 42, par. 323.7.

The Director was of the erroneous opinion he had unbridled discretion as to the questions making up the exam. His response to complaints over the exam that, "he, as Director of Personnel, could put a crossword puzzle on the exam and make it stick," evidences the low priority placed on his duties to make the exam job-related and to fully and adequately test all those eligible to take the exam.

With regard to the validity of the exam, the plaintiffs claim the exam in question is arbitrary, unfair and unreasonable because: (1) the training and experience portion of the exam improperly weighs experience; (2) the truncated nature of the exam improperly excludes qualified applicants from taking the substantive portions of the exam; and (3) the questions on the exam, as a whole, are not properly job-related for the position of supervising civil engineer.

The exam in question was divided into five areas of testing, with each area being assigned a certain percentage of importance. Thus, the "T and E" portion was to count for 20 percent, the written test for 20 percent, the oral test for 50 percent, etc. However, because the exam was truncated, in reality the first portion of the exam, which was the "T and E" portion, constituted 100 percent of the exam for those who failed it. Because the "T and E" portion could, by itself, serve to eliminate a candidate it must, on its own merits, satisfy the requirement to allow those qualified to be fully and adequately tested by a job-related exam.

The "T and E" portion of the exam was a form which was given to every qualified candidate. The form merely provided spaces for an individual to list his educational and work background. Under the scoring system used for the "T and E" portion a candidate's grade was determined by crediting his educational and work experience according to a point scale to reach a point total, deducting 307 points from this total, representing the minimum number of points needed to pass, and dividing this figure by 604, representing the difference between the individual with the minimum score (307) and the individual with the highest possible score (911). Under this system, an individual qualified to take the exam might be eliminated from taking the more substantive portions of the exam.

With regard to the scoring used to evaluate work experience on the "T and E" portion, such experience was classified as either "general," "supervisory" or "administrative," and the highest point value was given to administrative work, whereas the lowest point value was given to general work. A limitation was placed, however, on the number of years of each category of work experience which would be counted. Under the system used, a candidate could only receive a maximum credit for two years of administrative level work, while he could receive six years maximum credit for supervisory work and up to eight years credit for general work. If a candidate had more than two years administrative experience, the number of years of administrative experience in excess of two years would be counted at the supervisory level. In like manner, if a candidate had more than six years supervisory experience, the excess would be counted at the general level. Thus, the exam was weighted in favor of those who spent many years at the lower or general classification of engineering work, while it prejudiced those who might have served a fewer number of years, but who had performed at the higher levels of engineering.

Generally, civil service examinations like the one involved herein are given in the first instance to determine an individual's qualifications to perform a certain job function. Once an individual passes an examination, he is placed on an eligible list and, depending on the number of vacancies

in the position under examination, he may or may not receive appointment to the position; but once appointed, he must still serve a probationary period of up to one year, during which time his actual performance on the job is judged by his superiors before his appointment to the position is made permanent. Failure to receive favorable recommendations from his superiors during this probationary period will result in his dismissal from the position.

Significantly, all the plaintiffs have, in effect, already served a probational period and they have all performed as supervising civil engineers for a minimum of three years. Each has been placed in a position of great responsibility where they are intimately involved with overseeing costly projects. In our view, the best test of how an individual will perform on a job is the rating as to how he actually performs it.

It is unbelievable that Macaitis worked as an appointed supervising civil engineer for more than three years and has been found to exceed standards for the position by his superiors, yet this plaintiff's training and experience was found inadequate for the exact same position.

■■ We find the "T and E" portion of the exam improperly weighed experience. On this basis alone we hold the exam was arbitrary and unreasonable and is, therefore, void.

Plaintiffs also claim the truncated nature of the exam improperly excluded qualified applicants from taking the substantive portions of the exam, and we agree.

Although the method of truncating an exam benefits those scoring the exam by reducing the number of those qualified to take the full exam, the Director cannot ignore his duties to provide a job-related test to those qualified to take the test.

As previously noted, the first portion of the exam, the "T and E" portion, constituted 100 percent of the exam for those who failed it. The fact is, the "T and E" portion of the exam was not designed to test the relative capacity of the candidates to perform the job functions of a supervising civil engineer. If you cannot judge the competency of an individual from an exam, you certainly cannot judge his capability relative to the other candidates to perform a particular job function. We find, therefore, the truncated nature of the exam was unfair and unreasonable, was arbitrary and capricious, and such defectiveness is fatal to the exam as a whole.

The plaintiffs additionally claim the questions on the written portion of the exam were not properly job-related for the position of supervising civil engineer. The trial court held the exam was not an arbitrary or unreasonable exercise of the Director's discretion and directed a verdict against the plaintiffs at the close of their case, specifically stating they had

failed to prove a prima facie case. As indicated above, we disagree with the trial court.

The written portion of the examination was the second area tested. All candidates admitted to the exam were permitted to take the written test, but only those candidates who received passing marks on the "T and E" portion had their written test graded. The written test consisted of 150 multiple choice questions and, as in the case of the "T and E" portion, it was necessary to pass the written test to be eligible to proceed to the remaining portions of the exam. A candidate who failed to pass the written portion of the exam, which was designed to test his technical knowledge of the position, could not proceed to take those portions of the exam which, by the Chief Examiner's own design, had been weighted at 60 percent importance in relation to the test as a whole, and were considered to be the best test of an individual's abilities to perform the day-to-day functions of a supervising civil engineer. It is this fact of truncated testing which destroys any argument that the exam considered as a whole was a valid test of an individual's capacity to perform the duties of a supervising civil engineer because the majority of the candidates, such as the plaintiffs, were not permitted to take the entire exam. The reasonableness or fairness of later portions of the exam simply cannot be used to remedy the failure of prior sections to adequately test for these abilities.

With regard to the validity of the questions on the written portion of the exam, the record shows the individual who prepared the exam, Mr. Jeske, was aware of the distinction between sanitary and civil engineering and was further aware a supervising civil engineer is an administrative position, as opposed to one involving "nuts and bolts" engineering problems. Nonetheless, the written exam as given was not only designed solely to test for technical knowledge, but 60 out of the 150 multiple-choice questions dealt exclusively with sanitary engineering as opposed to civil engineering, which was the area for which the exam was given. In addition, the uncontradicted evidence shows the questions on sanitary engineering were very complex, requiring memorization of formulae, whereas the questions on civil engineering were extremely elementary. Ernest Bennett, the outside consultant who prepared certain of the questions on the exam, testified he had deliberately prepared questions for a senior engineering exam (the third out of the five levels), and if he had known the questions were for use on a supervising civil engineering exam he would have prepared different questions.

■■ The result of the use of a written test too heavily weighted in an area of engineering unconnected with the position under examination, and the use of questions of a type of content and level of difficulty also

612

unconcerned with the position, was not just to render the written exam inappropriate or unwise, but to render it illegal because the test, as given, bore no reasonable or fair relationship to the duties of a supervising civil engineer.

Mr. Jeske, who had responsibility for the overall preparation of the exam, was not an engineer, and he testified he had only a vague knowledge at best of the type of engineering problems faced by a supervising civil engineer. He, therefore, had to rely on outside consultants for preparation of test questions. However, the only outside consultant who testified, Mr. Bennett, expressly stated the questions he prepared, and which were included in the written test, were not related to the position of supervising civil engineer.

After a careful review of the entire record we find the evidence more than adequately shows the plaintiffs made out a prima facie case that the exam was arbitrary, unfair and unreasonable, and the circuit court erred in directing a finding against the plaintiffs.

For the foregoing reasons the judgment of the circuit court of Cook County directing a finding in favor of the defendants with regard to the declaratory judgment count of the complaint is hereby reversed; the judgment of the court dismissing the administrative review count of the complaint is hereby reversed; and the cause is remanded to the trial court with directions to order the Civil Service Board to implement its finding the exam was unfair, by voiding the exam in question and requiring a competitive, practical and fair test be administered in a single exam.

Reversed and remanded, with directions.

LINN and ROMITI, JJ., concur.