JAMES E. O'GRADY, Plaintiff, v. COOK COUNTY SHERIFF'S MERIT BOARD *et al.*, Defendants-Appellees (Bruce D. Hudson *et al.*, Plaintiffs-Appellants).

First District (6th Division)   Nos. 1—92—0441, 1—92—0570 cons.

Opinion filed March 18, 1994.

Armand L. Andry, of Oak Park, for appellant Willie Jackson.

Bruce D. Hudson, of Chicago, appellant *pro se.*

Sidley & Austin (John G. Levi, Brian J. Gold, and Scott E. Gross, of counsel), C. Victoria Almeida, and Bruno J. Tassone, all of Chicago, for appellees.

JUSTICE GIANNIS delivered the opinion of the court:

The Cook County Sheriff's Merit Board (Merit Board or Board) issued a ruling on April 12, 1990, which held that certain employee certifications made in 1985 were invalid. The Board voided all of the invalid certifications and rescinded the appointments of the certified employees to merit-protected positions. The circuit court affirmed the decision of the Merit Board. Plaintiffs' certifications and appointments were held invalid, and they have appealed.

The Cook County sheriff's merit board act (Merit Act or Act) (55 ILCS 5/3—7001 *et seq.* (West 1992)) was amended on July 1, 1984, to

provide merit protection to deputy sheriffs who were not county police or correctional officers. The Act required the Merit Board to establish a classification of ranks for deputy sheriffs and to set standards of qualification for each rank in accordance with recognized merit principles of public employment. (55 ILCS 5/3—7006 (West 1992).) Under the Act, the sheriff was authorized to appoint deputy sheriffs to ranks as established by the Merit Board after the Board certified their qualifications for such ranks. (55 ILCS 5/3—7008 (West 1992).) The Merit Board was required to certify to the county clerk, or other auditing officers, all appointments to offices and places as may be classified. (55 ILCS 5/3—7016 (West 1992).) In addition, the Act specifically provided that the Merit Board shall investigate the enforcement of the statute, the rules of the Board, and the conduct and action of the appointees thereunder. 55 ILCS 5/3—7015 (West 1992).

In 1985, the Merit Board promulgated certain rules creating a hierarchy for deputy sheriff ranks which included deputy captains, deputy lieutenants, deputy sergeants, and deputy sheriffs. After administering a series of examinations, the Merit Board certified 171 employees within the Cook County sheriff's office to these various ranks. In 1986, Sheriff Elrod appointed these employees to the ranks for which they had been certified by the Board. On August 25, 1987, Sheriff O'Grady, Elrod's successor, sought leave to file a complaint with the Merit Board, charging that the Board and Elrod had failed to comply with the Merit Act and with the Board's rules during the certification and appointment of these 171 employees. O'Grady requested that the Merit Board investigate these charges, issue appropriate subpoenas in furtherance of the investigation, hold a formal hearing to review his allegations, void the certifications, and declare the appointments invalid.

The Merit Board denied O'Grady's request to file the complaint, holding that the Board lacked statutory authority to review its own actions or to grant the declaratory relief requested. O'Grady challenged this ruling by filing a complaint for administrative review. During the pendency of the administrative review action in the circuit court, the three-member Board, with one member dissenting, maintained its position that it lacked statutory authority to grant the relief sought by O'Grady. The circuit court ultimately determined on February 14, 1989, that the Merit Board did have jurisdiction to review the allegations in O'Grady's complaint. The circuit court thereafter held two of the Merit Board members in civil contempt for refusing to review and investigate the allegations in O'Grady's complaint. This court subsequently reversed the circuit court's finding of

contempt in a Rule 23 order (134 Ill. 2d R. 23) issued September 28, 1990. See *O'Grady v. Cook County Sheriff's Merit Board* (1st Dist. 1990), No. 1—89—0608 (unpublished order under Supreme Court Rule 23).

On April 6, 1989, the Merit Board ordered a hearing on the allegations contained in O'Grady's complaint. The Merit Board granted the parties six months to complete discovery and hearings were conducted from November 17, 1989, through February 12, 1990. Counsel for plaintiff Jackson attended and participated in the hearings held on January 30, 1990, and on February 12, 1990. Counsel for plaintiff Hudson attended and participated in the hearings held on January 12, 1990, on January 30, 1990, and on February 12, 1990.

The evidence adduced at these hearings established that on April 1, 1985, Elrod appointed Major Anthony Yucevicius to serve as liaison between the sheriff's office and the Merit Board and to direct the process by which deputy sheriffs were to be certified for and appointed to merit-protected ranks under the Merit Act. Upon the recommendation of Yucevicius, the Merit Board amended its rules and regulations to create the merit-rank classifications of deputy captain, deputy lieutenant, deputy sergeant, deputy sheriff, and exempt employees. According to Yucevicius, these classifications corresponded to the ranks of deputy V, deputy IV, deputy III, deputy II, and deputy I, previously used in the sheriff's office. No new job descriptions were written for these classifications, nor were minimal qualifications established. The amended rules also established a testing and certification procedure for incumbent supervisory personnel but failed to define the supervisory positions which would be protected under the Merit Act. Sheriff Elrod had sole discretion in identifying the employees who were in supervisory positions and were eligible for certification under the Merit Act. The certification of incumbent supervisory employees was separate and distinct from the certification of nonsupervisory employees. At Elrod's request, Yucevicius compiled a list of incumbent supervisory personnel who would be eligible to take the examination for merit protection. This list included certain individuals who did not perform any supervisory functions and included custodians, administrative assistants, the sheriff's personal secretary, and other individuals who were not deputy sheriffs. Elrod reviewed, approved, and signed the list of incumbent supervisory employees.

This list was submitted to the executive director of the Merit Board, who was directed to include all of those listed in a certification examination session scheduled for July 13, 1985. Eight days

before the examination, Yucevicius sent a second list to the executive director, adding the names of employees who had been omitted from the prior list. The employees whose names appeared on the second list were also to be included in the examination session. The 192 employees specified on these two lists constituted less than 20% of the more than 1,000 deputy sheriffs employed in the sheriff's office at that time. The employees whose names were not on these two lists were excluded from participating in the examination. The Board accepted the lists without conducting any independent review of the abilities or qualifications of those whose names were included.

The examination session consisted of two tests: the Otis-Lennon test, which had been used by the Board in prior certification processes, and a new test which was based upon information contained in the general orders of the sheriff's office. The general-orders test was prepared by two employees who knew that they would take that test during the examination session. Although the general-orders test was reviewed by Elrod and Yucevicius, no member of the Merit Board ever reviewed this test.

After the examination session on July 13, 1985, Yucevicius sent a memorandum to Elrod which summarized the poor performance of those tested. Elrod then instructed Yucevicius to administer a second examination to those who had scored below 20% on the Otis-Lennon test and below 50% on the general-orders test. The second examination session was administered on August 7, 1985. Many of the individuals who had failed to meet the sheriff's minimum scores were permitted to take the same examination again during the second, third, and fourth examination sessions ordered by Elrod. The Merit Board never set a minimum passing score for either of the tests administered during these four examination sessions.

On October 1, 1985, lists were issued which included the names of those individuals who were certified for appointment to the merit-protected ranks of deputy captain, deputy lieutenant, and deputy sergeant. These lists included certain individuals who had failed to meet the sheriff's personal minimum scores and individuals who had not yet taken the certification examination. The lists were supplemented on December 4, 1985.

On December 5, 1985, Yucevicius sent a letter to the Cook County position classification agency, which requested that the budgeted rank of deputy sheriff V be reclassified as deputy captain, deputy sheriff IV as deputy lieutenant, deputy sheriff III as deputy sergeant, and deputy sheriffs II and I as deputy sheriff. This letter also requested that the number of individuals in those budgeted positions be increased and sought a change in their pay grades. Although this

reclassification never occurred, Elrod appointed the certified employees to the ranks of deputy captain, deputy lieutenant, and deputy sergeant. Elrod appointed 38 deputy captains and 47 deputy lieutenants, despite the fact that he had only requested budget allocations for 9 deputy captains and 31 deputy lieutenants. These appointments were made effective on December 1, 1985, prior to the certification of some of the individuals included and before the sheriff's office had requested the budget reclassification.

On April 12, 1990, the Merit Board determined that the 1985 certification process was unlawful and declared void those certifications and the sheriff's subsequent appointments of those individuals to merit-protected ranks.

Plaintiffs Jackson and Hudson filed complaints in the circuit court seeking *certiorari* of the Board's determination. On January 24, 1992, the circuit court affirmed the decision of the Merit Board which found that the 1985 certifications and 1986 appointments were invalid. In entering this ruling, the circuit court stated, *inter alia*, that the certification and appointment processes were "fraught with legal defects from start to finish." In addition, the court held that the fact that some of the individuals certified might have innocently participated in the illegal certification process was legally irrelevant where the entire process was in violation of the Merit Act. The court went on to state that where the whole process was irreparably defective, the court could not selectively decide to recognize the certification and appointment of particular applicants but deny the certification and appointment of others.

Plaintiffs Jackson and Hudson have appealed the circuit court's ruling, and their appeals have been consolidated.

Plaintiffs initially assert that the Board lacked the authority to void their 1985 certifications and 1986 appointments to merit-protected ranks.

■ It is established that administrative agencies, such as the Merit Board, exercise purely statutory powers and possess no inherent or common law powers. (*Schalz v. McHenry County Sheriff's Department Merit Comm'n* (1986), 113 Ill. 2d 198, 202, 497 N.E.2d 731.) Any power or authority claimed by an administrative agency must find its source within the provisions of the statute by which the agency was created. (*Schalz*, 113 Ill. 2d at 202.) An administrative agency cannot extend its statutory authority by enacting administrative rules. (*Schalz*, 113 Ill. 2d at 204.) The authority of an administrative agency must derive either from the express language of the enabling act or by fair implication and intendment from the express provisions of the act as an incident to achieving the objectives for

which the agency was created. (*Schalz*, 113 Ill. 2d at 202-03.) An express grant of power to an administrative body or officer includes the authority to do all that is reasonably necessary to execute that power or to perform the duty specifically conferred. *Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 347, 365 N.E.2d 667; *Meana v. Morrison* (1975), 28 Ill. App. 3d 849, 854, 329 N.E.2d 535; *Fahey v. Cook County Police Department Merit Board* (1974), 21 Ill. App. 3d 579, 583, 315 N.E.2d 573.

■ Section 3—7015 of the Merit Act provides that the Merit Board "shall investigate the enforcement of this Division and its rules, and the conduct and action of the appointees herein provided for." (55 ILCS 5/3—7015 (West 1992).) Although the language of section 3—7015 does not expressly authorize the Merit Board to void illegal certifications ·and/or appointments, this provision clearly contemplates that the terms of the Act are to be enforced by the Board and specifically requires that the Board investigate the enforcement of the Act and its rules. Consequently, the Board and the circuit court acted properly in concluding that the Board was authorized to void the illegal certifications and appointments where that action was reasonably necessary to execute the duty to investigate and enforce the terms of the Act.

A statute must be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute. (*Parliament Insurance Co.*, 50 Ill. App. 3d at 346.) In order to ascertain and give effect to the legislature's intent, courts of review may look beyond express words and may consider the prospective and remedial objectives or purpose to be served by the statute. (*Parliament Insurance Co.*, 50 Ill. App. 3d at 346.) Here, the Merit Act was enacted to ensure that appointment to positions within the sheriff's office would be on the basis of merit as well as to protect the rights of those employees who have proved themselves qualified and deserving of merit protection. To say that the Board had the power and duty to investigate and enforce the Act but had no authority to void certifications and appointments which were in violation of the terms of the statute " 'would be a distinct contradiction in terms' " (*Meana*, 28 Ill. App. 3d at 855, quoting *People ex rel. Heineck v. Holding* (1917), 207 Ill. App. 38, 41-42) and would contravene and frustrate the intent and purpose of the Act (*Parliament Insurance Co.*, 50 Ill. App. 3d at 346). Where the legislature intended to grant to the Merit Board the authority, express and implied, necessary to effectively carry out and accomplish the objectives of the Act, the provisions of the Act should be construed accordingly. (*Parliament Insurance Co.*, 50 Ill. App. 3d at 345; *Fahey*, 21 Ill. App. 3d at 583.)

The authority of the Merit Board to void the illegal certifications and appointments may be implied from the terms of the Act (*Parliament Insurance Co.*, 50 Ill. App. 3d at 345; *Fahey*, 21 Ill. App. 3d at 583), and the acts of administrative agencies and officers should be upheld where, as here, those acts are within limits relevant to the purpose of the particular enabling act (*Parliament Insurance Co.*, 50 Ill. App. 3d at 348). Consequently, we hold that when the statutory mandates are not adhered to, the Merit Board has the authority to void certifications and corresponding appointments of individuals to merit-protected positions. See *Meana*, 28 Ill. App. 3d at 854-55.

Plaintiffs next assert that the Merit Board erred in determining that their certifications and appointments were illegal because they did not comply with the terms of the Merit Act.

The decision of an administrative agency will not be overturned on review unless it is contrary to the manifest weight of the evidence. (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 550, 426 N.E.2d 885.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in a light most favorable to the Board, the court determines that no rational trier of fact could have agreed with the Board's decision. (*Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1093-94, 492 N.E.2d 929.) The decision must be upheld where the record includes competent evidence to support it. (*Profice v. Board of Review of the Illinois Department of Labor* (1985), 135 Ill. App. 3d 254, 257, 481 N.E.2d 1229.) A court of review may neither reweigh the evidence nor substitute its judgment for that of the trier of fact. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085; *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322.) The findings of fact of an administrative agency on questions of fact are held to be *prima facie* true and correct. (*Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 550.) The question of whether there is sufficient cause for discharge is generally for the administrative agency to determine, and that determination must be accorded substantial deference. (*Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 551.) An administrative decision as to cause to discharge will be reversed only where it is arbitrary, unreasonable, or unrelated to the requirements of service. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115; *Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 552.

■ The certification and appointment processes at issue were to be conducted in accordance with recognized merit principles of public

employment. (55 ILCS 5/3—7006 (West 1992).) These principles are designed to ensure competent service for governmental bodies, free from the "spoils system" and include the following: the best qualified person receives appointment or promotion; all of those seeking promotion will have open access to the process, with some form of competition to determine the relative merit of all of the applicants; open competition encompasses the opportunity to apply for a position on the basis of ability; and ranking is determined by an independent body. See generally *Burns v. Sheriff's Department Merit Comm'n* (1980), 86 Ill. App. 3d 226, 228, 407 N.E.2d 1134; *Meana*, 28 Ill. App. 3d at 857; *Fahey*, 21 Ill. App. 3d at 586.

The Board voided the 1985 certifications and 1986 appointments based upon the failure to adhere to these recognized merit principles of public employment. That determination will not be reversed unless it is against the manifest weight of the evidence.

■ The evidence adduced at the hearing established that only those individuals who were hand-picked by the sheriff were permitted to take the certification examinations. Other employees who were not selected by the sheriff but who might have possessed the abilities to qualify for merit-protected ranks were not offered the opportunity to take the examinations. Thus, the certification process did not ensure that those appointed to merit-protected ranks were the best qualified according to objective and relevant criteria. No job descriptions or minimum qualifications were established for the newly created ranks. The list of incumbent supervisory personnel included certain individuals who performed no supervisory functions and others who were not even deputy sheriffs.

It has been held that the sheriff's failure to comply with the procedural rules of a merit commission raises a jurisdictional issue which renders his actions void. (See *Fruhling v. County of Champaign* (1981), 95 Ill. App. 3d 409, 417, 420 N.E.2d 1066.) Where an administrative officer has acted arbitrarily or capriciously and has thereby abused his discretion, courts should not hesitate to intervene, and where an examination process fails to fully and adequately test all those eligible to take the examination, the Board may set aside the examination. (*Macaitis v. Civil Service Board of the Metropolitan Sanitary District of Greater Chicago* (1978), 58 Ill. App. 3d 600, 608, 374 N.E.2d 939.) When the statutory mandates are not adhered to, the Board has the authority to void an examination and cancel the resulting list of employees eligible for appointment or promotion. (*Meana*, 28 Ill. App. 3d at 854-55.) Where the sheriff is the sole determiner of who will be considered for appointment or promotion and there is no open access to all employees who may be qualified or

eligible, the process fails to conform to recognized merit principles. (*Burns*, 86 Ill. App. 3d at 229.) The failure to set forth job descriptions or minimum standards for each rank makes it impossible to determine whether an applicant was minimally qualified for a particular position or rank, and it precludes review of whether the appointment/promotion process was fairly applied to each applicant. (*Burns*, 86 Ill. App. 3d at 229.) An examination administered to evaluate a public employee's qualification for appointment or promotion must be job-related and must allow all those eligible to be fully and adequately tested. (*Macaitis*, 58 Ill. App. 3d at 608.) If a testing procedure fails to satisfy these requirements, it is rendered illegal (*Macaitis*, 58 Ill. App. 3d at 612) and may be set aside as arbitrary and unreasonable (*Macaitis*, 58 Ill. App. 3d at 610).

Although the supreme court has held that the entire examination process need not be declared void where a qualifying examination is given in violation of a personnel/merit statute as long as the court is able to review the scores of the employees tested and determine whether each employee achieved or exceeded a passing score (*Boner v. Jones* (1975), 60 Ill. 2d 532, 541, 328 N.E.2d 548), this holding is inapplicable to the instant case where no passing or minimum score was established for the qualifying examination.

The mere fact that an employee may have worked and been compensated in a supervisory position does not automatically render his appointment valid. If he was appointed and/or promoted pursuant to an examination process which was illegal for failure to comply with the Merit Act, his appointment will be considered invalid despite the fact that he was able to work and earn the salary for a position which ostensibly was merit-protected.

It has been held that an attempted appointment is void and of no legal effect if there is no position available. (*De Guiseppe v. Board of Fire & Police Commissioners* (1975), 30 Ill. App. 3d 352, 355-56, 332 N.E.2d 405.) Yet, a position will be deemed to exist even if not officially created by formal ordinance where an employee has properly been placed in that position, has performed the duties of the position, and has earned a salary for the work performed. (See *People ex rel. Bubash v. Board of Fire & Police Commissioners* (1973), 14 Ill. App. 3d 1042, 1046-47, 303 N.E.2d 776; *People ex rel. Kwiat v. Board of Fire & Police Commissioners* (1973), 14 Ill. App. 3d 45, 50-51, 302 N.E.2d 170.) The Board's failure to certify to the appropriate county auditing officer that the appointments were to properly budgeted positions constitutes another failure to comply with the Merit Act. (See 55 ILCS 5/3—7016 (West 1992).) Thus, the merit-protected ranks will not be considered valid positions merely because certain employ-

ees may have been performing those functions and receiving an annual salary.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.