Herbert MINKUS, Plaintiff-Appellant,

v.

The METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO ("MSD"); Board of Trustees of the Metropolitan Sanitary District of Greater Chicago; Bart T. Lynam, Individually and as General Superintendent of the MSD; Allen S. Lavin, Individually and as Attorney for the MSD and Donald R. Morrison, Individually and as Director of Personnel for the MSD, Defendants-Appellees.

No. 78–1401.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1978.

Decided June 6, 1979.

Marvin J. Rosenblum, Chicago, Ill., for plaintiff-appellant.

Ina S. Winston, Metropolitan Sanitary District of Greater Chicago, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and PELL and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The issue in this appeal is whether the district court properly granted the defendants' motion for summary judgment. The plaintiff, Herbert Minkus, is an Orthodox Jew who was unable to take a November, 1974, civil service examination administered by defendant Metropolitan Sanitary District of Greater Chicago because of his religious practices. The examination for the position of Maintenance Laborer A was scheduled to be given on a Saturday—the

Jewish Sabbath on which religious law enjoins its adherents to absolute rest. When the Sanitary District refused to make arrangements for the plaintiff to take the examination at another time, Minkus filed suit against the Sanitary District and several of its officers, alleging that they refused to accommodate his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). The plaintiff sought declaratory, injunctive, and various other relief.

After the parties entered into a seven-page stipulation of facts, they filed cross-motions for summary judgment. The district court granted the defendants' motion, ruling that the defendants had "fulfilled their duty to accommodate plaintiff by giving his problem their serious consideration and declining to take steps to alleviate it only because of a countervailing policy" that written examinations be administered simultaneously to all candidates. Responding to the three alternatives which the plaintiff had proposed as ways to accommodate his religious practice, the district court held that it would have been unreasonable to expect the Sanitary District to reschedule the examination with only two weeks notice or to incur the expense of designing a new examination and administering it to the plaintiff at a different time or to sequester the plaintiff during the regular examination and administer the same examination to him shortly before or after his Sabbath.

Rule 56 of the Federal Rules of Civil Procedure permits the district court to grant summary judgment to any party when there is no genuine issue of material fact remaining for trial and the controversy can be decided as a matter of law. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). The same standard governs our review: we must view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.

The amendments to the Civil Rights Act of 1964 define "religion" as

all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). This circuit has held that whether an employer can reasonably accommodate a person's religious beliefs without undue hardship "is basically a question of fact." *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978). The determination of whether a particular course of action is reasonable "necessarily depends upon its own facts and circumstances." *Id.* Although the parties filed a stipulation of facts, we believe that reasonable men might differ about the significance of the agreed-upon facts and that many of the facts and circumstances that are necessary to determine whether the Sanitary District could have accommodated the plaintiff without undue hardship do not appear in the record.[1]

The record indicates that the Sanitary District was informed on three occasions before the scheduled examination date of the plaintiff's inability to take the examination on a Saturday. Each time the District declined to grant a variance from its personnel rule which provides that "all of the candidates authorized to take any written test shall be given that test simultaneously." Although the district court's memorandum opinion concludes that the District gave the plaintiff's problem its "serious consideration," the record only indicates the District's rigid adherence to its personnel rule. Thus, if the inferences from these facts are considered in the light most favorable to the plaintiff, it is fair to say that the

---

1. Before this court, the Sanitary District has attempted to defend the trial court's judgment on the basis that even if the plaintiff were permitted to take the exam, passed, was placed on the eligible list, and offered a position, he still would be unable to accept employment because he might be required to work on Saturdays. This argument, however, also raises other issues of fact as well as law which are unresolved at this stage of the litigation.

defendants made no effort to accommodate the plaintiff's religious practice. The question becomes whether it would have imposed an undue hardship upon the Sanitary District either to grant a variance to the plaintiff from its personnel rule or to schedule the exam to a day other than Saturday.

■ The Sanitary District maintains that the Illinois law which mandates that the District's civil service examinations be "public and competitive," Ill.Rev.Stat. ch. 42, § 323.7, requires that all candidates take the test under exactly the same conditions. It argues that therefore its personnel rule providing for simultaneous written exams is required by statute. We think it is clear, however, that the Illinois law does not require simultaneous exams. If it did, the District's own practice would be inconsistent with the Illinois Act, because its rules require simultaneity only for written exams and not other forms of examination, e. g., performance exams. *Meana v. Morrison*, 28 Ill.App.3d 849, 329 N.E.2d 535 (1975), relied on by the Sanitary District, is not to the contrary. In that case, the court upheld the District's decision to void a register when an examination was tainted by the use of slide rules and calculators by some, but not all, applicants. "A competitive examination is one in which the candidates are required to participate against each other equally before the examiners in answering questions of *like character and nature* and to have equal opportunity to compete each against the other under *like and similar conditions.*" *Id.* at 857, 329 N.E.2d at 542 (emphasis added). We find no requirement that examinations be identical or simultaneous. To the contrary, the reported decisions of the Illinois courts recognize the broad discretion of the District to establish its own personnel practices. *See, e.g., People ex rel. Council 19 of AFSCME v. Egan*, 52 Ill.App.3d 1042, 10 Ill.Dec. 886, 368 N.E.2d 481 (1977) (Director of Personnel, under statutory duty to establish rules for "uniformity of pay and title" may give same title and annual pay to employees even though some work only 35-hour weeks and others work 40-hour weeks). Thus, we cannot say that Illinois law compels the Sanitary District to administer written exams simultaneously.[2]

■ Although the Sanitary District's personnel rule requiring simultaneous exams may be a rational guideline for test administration, we are not convinced that it by itself can negate the District's duty to reasonably accommodate the religious practices of job applicants. If the District did not have the power to construe its personnel rule to admit of exceptions to accommodate the plaintiff's situation, *but cf. Hoffman v. Wilkins*, 132 Ill.App.2d 810, 820, 270 N.E.2d 594, 601–02 (1971) (agency has power to construe its rules to avoid absurd or unfair results), its duty to comply with federal law compelled it to do so absent a showing of undue hardship.

The practices of other area government employers buttress our conclusion that examinations need not be simultaneous in order to be "public and competitive." The record contains evidence that other public agencies with statutory requirements similar to those governing the Sanitary District make alternate arrangements for people who for religious reasons cannot take an examination at its regularly scheduled time. The Civil Service Commission of Cook County, Illinois, whose examinations must be "public, competitive and open," Ill.Rev. Stat. ch. 34, § 1110, administers similar, but

**2.** On the contrary, the Illinois statute upon which the District relies, Ill.Rev.Stat. ch. 42, § 323.7, may be construed to require the District to administer the test to the plaintiff. The statute on its face is mandatory: "*All* applicants . . . *shall be* subjected to examination, which shall be public and competitive . . . ." (emphasis added). One court has defined a "competitive examination" as one which is "open to *all* who are eligible." *Almassy v. Los Angeles County Civil Service Com-* mission, 34 Cal.2d 387, 397, 210 P.2d 503, 510 (1949) (emphasis added). *See also Macaitis v. Civil Service Board*, 58 Ill.App.3d 600, 608, 16 Ill.Dec. 164, 170, 374 N.E.2d 939, 945 (1978) (District has a duty "to allow those qualified to be fully and adequately tested"). Affording the plaintiff in this case an opportunity to take the exam would also be within the spirit of another provision in the Illinois Act which provides: "No question in any examination shall relate to . . . religious opinions or affiliations."

not identical, examinations to such candidates before and after administering the regularly scheduled examination. The Chicago Department of Personnel either reschedules the examination for these candidates or sequesters them during the regularly scheduled examination and administers the same exam when their Sabbath ends. Federal Civil Service examinations also must be "open [and] competitive," 5 U.S.C. § 3304(a)(1), but the Examining Systems Manual, ch. 1, § 12, authorizes arrangements for special examinations for members of religious groups who observe sabbath on Saturday. We are of course aware of the importance of maintaining the integrity of civil service exams, *see Metropolitan Sanitary District v. Huston*, 9 Ill. App.3d 855, 857, 293 N.E.2d 425, 431 (1973), but we find nothing that would make the plaintiff's proposals for an alternate exam date necessarily inconsistent with the Sanitary District's statutory duties or principles of sound personnel administration.

The Sanitary District presents two additional arguments that separate examination of the plaintiff would cause it to suffer undue hardship: the threat of litigation and the cost of administering a separate examination. We do not believe that either of these two "hardships" is sufficiently supported in the record to justify summary judgment.

The stipulation declares that in the past unsuccessful candidates have filed suits challenging examinations and resulting eligibility lists when examinations allegedly have not been given to all candidates under the same conditions. Moreover, "[i]n the course of such litigation, the District has been barred for long periods of time from appointing individuals who are on the eligible list. . . ." Although the threat of such disrupting litigation may in some circumstances constitute undue hardship, we are unable to say that the record estab-

lished it here. First, there is no indication in the record that prior litigation involved circumstances similar to this case. Here, the plaintiff's proposals for accommodation contemplated a supervised separate exam with adequate precautions to protect the integrity of the examination process. Reported Illinois opinions involving the administration of the District's civil service exams involve quite different factual contexts. The record lacks any information about the nature and results of any unreported litigation. Thus, we cannot say that the threat of litigation if the Sanitary District had accommodated the plaintiff was substantial. Second, our examination of Illinois law above convinces us that any litigation, if commenced, would be unlikely to be disruptive. Since there would be little likelihood of a disappointed applicant succeeding on the merits, any applications for preliminary relief enjoining appointments from the eligibility list would probably be denied. Litigation challenging agency action is almost always a possibility and therefore is a matter that the agency's lawyers will naturally consider. Assuming *arguendo* that the possibility of a substantial legal challenge can in some cases constitute undue hardship, we are unable on this record to conclude that the possibility was significant or the threat to the conduct of the Sanitary District's operations substantial.

As to the issue of the costs of administering a separate exam, the plaintiff's evidence of the personnel practices of other units of government which we have discussed above tends to indicate that these costs are not unreasonable or unduly burdensome. The record in this case is largely devoid of evidence of what the costs of a separate exam would be or who would bear them.[3] Consequently, the inference created by the plaintiff's evidence goes unrebutted. It is not enough at this stage of the proceedings to dismiss the conduct of other

---

3. The stipulation of facts states that it would cost $1,600 to pay a personnel expert to design a comparable exam, pay for clerical help, and hire two proctors to administer a separate exam. This figure, however, does not relate to the sequestration alternative suggested by the plaintiff. Moreover, the record contains no indication that the plaintiff would be unwilling to defray at least part of any added expense. We do not reach and do not decide the question of whether the plaintiff can be required to defray any added cost in whole or in part.

units of government as "concessions" which the Sanitary District was under no obligation to make. The custom or practices of other similarly situated employers is probative of what is reasonable accommodation or undue hardship under the circumstances.

The stipulation of facts states that "[t]he District has traditionally given examinations for entry level positions on Saturdays so that as many members of the public as possible would be able to take the test." The plaintiff maintains that the District should have scheduled the examination for a time when it would have been available to all. This, of course, would permit the Sanitary District to adhere to its personnel rule requiring simultaneous examinations. It is at best doubtful that all can be accommodated at any one time. The trial court, however, rejected this suggestion because, in its opinion, it would be unreasonable to require an employer to anticipate that an applicant would observe a Saturday Sabbath and to schedule exams to avoid any conflict.

We cannot say as a matter of law that when a public employer is under a duty to make examinations "public and competitive" that he could not anticipate a Saturday exam to conflict with the observance of the Sabbath by members of several religious groups. *See* 118 Cong.Rec. 705 (1972) (remarks of Sen. Randolph). There is some indication in the record that Saturday exams are considered convenient for members of the public and the Sanitary District. Nevertheless, in the absence of more concrete evidence that another time for the examination—weekday evenings, for example—would unreasonably diminish the availability of the exam to other members of the public and thereby defeat the Dis-

trict's legitimate purpose to make the competition open to all applicants, we believe the District may have a duty to schedule examinations on days other than or in addition to Saturdays.

The issue presented here is one which requires a delicate balancing of the interests of the plaintiff, the Sanitary District, and other applicants for positions with the District. As the Sanitary District notes: "Most people work during the week. Friday is the Moslem Sabbath and Sunday is the Christian day of rest." Nevertheless, the Sanitary District has maintained a fairly consistent practice of scheduling entry level civil service exams on Saturdays and thereby excluded from employment Orthodox Jews as well as other Saturday Sabbatarians. We are reluctant to declare the obligations of the District to accommodate the religious practices of potential employees on a record as barren as the one before us. It should be expected, however, that a public agency would anticipate and plan in advance to make some reasonable accommodation for those applicants of recognized religious groups constituting a significant segment of the community. The District's rigid policy may well have discouraged numerous other persons from applying. Consequently, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.[4]

PELL, Circuit Judge, concurring.

Although, for reasons stated below, I tend to regard the stipulated facts of this case as demonstrating a result beyond a proper outer reach in the application of Title VII to a claim by a possible employee of failure to accommodate his religious beliefs, I concur in the result reached in Judge Wood's opinion, reading that opinion, as I

---

**4.** The plaintiff's Title VII claim was joined with claims under 42 U.S.C. § 1983, the Illinois Constitution, and the Illinois Fair Employment Practices Act. The parties before the trial court agreed and the trial court treated the issues under all these statutes as the same. Without necessarily agreeing with that conclusion, we think these claims are more appropriately addressed upon a more fully developed record than is presently available. *See* 10 C. Wright & A. Miller, Federal Practice and Proce-

dure § 2725 at 503–05 (1973). Consequently, the trial court's summary judgment for the defendants on these claims is also reversed. The trial court, if it reaches the section 1983 claim, should also reconsider its earlier dismissal of the section 1983 claim against the District in light of the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 658 (1978).

do, that it holds that a further development of facts and circumstances is necessary and that therefore summary judgment was inappropriate.

As Professor Kenneth T. Lopatka[1] has observed in a careful and scholarly analysis of the present area of the law:

Because each case involving reasonable accommodation or undue hardship is highly dependent on the particular factual setting, general principles are not easily obtained from the cases. The decisional process involves balancing the quantum of hardship incurred by the employer in various accommodative schemes and the concomitant burdens that the schemes place on the religious employee. The outcome of the balancing process defies precise prediction. (Footnote omitted). (*Id.* at 107).

While I would tend to think that Judge McGarr did have all of the genuine material issues of fact before him required for the entry of a summary judgment, and did, under the decisional process guideline stated by Professor Lopatka, carefully balance the respective quanta, and although I would have thought therefore that an affirmance was proper in this case, I recognize that some of the factual matters which Judge Wood's opinion specified as needing further development creates an arguable case for a full evidentiary trial. This case aptly illustrates the structural difficulties of obtaining summary judgment in a religious discrimination case.

Notwithstanding that I am concurring, albeit somewhat reluctantly, I think it appropriate because the case is being remanded for further proceedings to note some of the salient facts which seem to indicate a contrary result to that which we have reached.

Title VII's protection in the present area extends, of course, not only to the existing employee but also to the prospective employee. There seem to be, however, very few cases dealing with the latter category. Two such cases are *Jordan v. North Caroli-*

na *National Bank*, 565 F.2d 72 (4th Cir. 1977), and *Reid v. Memphis Publishing Company*, 369 F.Supp. 684 (W.D.Tenn.1973), aff'd. 521 F.2d 512 (6th Cir. 1975), *cert. denied*, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333. In both of these cases it appears, however, that the plaintiff would have been employed except that religious beliefs precluded working on certain days. The present case had not even reached the point of whether it would have been possible for the District to have accommodated the religious beliefs of Minkus if he had been employed although the record shows that the position in question requires an individual to perform heavy manual labor at the District's sewage treatment plants which are in operation 24 hours per day, 7 days per week. Further, the record shows that dependent upon the District's need, an individual laborer may be required to work an 8 hour, morning, afternoon, or night shift for five consecutive days, including weekends. This situation, it would seem, would present virtually insurmountable problems of accommodation as would be indicated from an analysis of the factors listed in Professor Lopatka's article for the person who has achieved employee status:

The major factors which enter into the decision of whether the hardship involved is "undue" are the size of the work force, *the type of shift scheduling involved in the employer's operation*, the skilled status of the religious employee, the existence of a pool of qualified replacements, *the risk of impairment in the performance of essential public services*, and the safety considerations involved in the reduced manning of crews or *in requiring employees to work successive shifts to substitute for the religious employee.* (Footnotes omitted.) (Emphasis added as to those matters particularly applicable here.)

1977 U.Ill.L.F. at 108.

Further, in contrast to those cases where it is clear that the applicant would have gotten the position except for the interference with her or his performance on the job

---

1. Lopatka, *A 1977 Primer on the Federal Regulation of Employment Discrimination*, 1977 U.Ill.L.F. 69, 101 et seq. (1977).

because of religious belief, it is far from clear that Minkus would have gotten the job even if he had taken the examination. There were 1,444 candidates who took the examination in question. Of these 1,264 passed the examination,[2] some 28 of whom were on a preferred status by virtue of prior employment. Of the 1,264 individuals who passed the test, only 111 were permanently appointed to the position in question.

Another factor of interest is that so that the relatively unskilled labor group who were applying for this job would not have to take time off from other jobs to take the examination, it was scheduled for Saturday, when the greatest number would not be working. I do not know the number of Orthodox Jewish people in the Chicago area whose sabbatarian views were those entertained by Minkus and who might be interested in the employment in question. Presumably, it would seem, in a city the size of Chicago there would be more than a few. Yet strangely, there is no indication in the record that the traditional scheduling of the examination on Saturday had ever created a problem. This is particularly pertinent in view of the fact, insofar as accommodating Minkus on the particular examination is concerned, that Minkus did not raise the religious claim until just about two weeks before the date the examination was to be given.

Other factors have been adverted to in the opinion of Judge Wood, and were treated in Judge McGarr's Memorandum Opinion wherein he considered each of the proposed alternative methods of accommodation and on balance found them insufficient. In sum, the cumulative effect of all of these various factors makes a strong case for affirmance of a summary judgment.

Also, I note the persuasive analysis of Professor Lopatka, 1977 U.Ill.L.F. at 103–05, raising a question of constitutionality as to this particular part of Title VII violating the First Amendment prohibition on laws "respecting an establishment of religion":

A congressional prohibition of intentional discrimination on religious grounds is clearly a neutral government stance. A congressional mandate, however, which requires the modification of seniority systems, overtime schedules, vacation schedules, and other generally applicable employment practices to fit the objections of employees with certain religious beliefs but which does not afford similar treatment to other employees who have the same preferences but who do not claim religious scruples (or who hold the same beliefs, but whose religions do not require their translation into action) arguably constitutes a preference on account of religion. The argument that a preference exists is especially strong because the religious advantage burdens the other employees and the employer. *Id.* at 103.

The constitutionality question, however, would not have to be reached in the present status of the case.

---

2. I am assuming arguendo, indeed, as a practical matter, that Minkus would have passed the examination. From my reading of the simple examination for this "blue collar" job it was

primarily designed to weed out those who could not read and understand elementary words of the English language.