(No. 53566.—)

CENTRAL ILLINOIS LIGHT COMPANY, Petitioner, v. J. THOMAS JOHNSON, Director of Revenue, *et al.*, Respondents.

*Opinion filed March 18, 1981.*

SIMON, J., took no part.

Terry F. Moritz, Vicki A. Thompson, and Richard A. Angell, of Rudnick & Wolfe, of Chicago, and Thomas M. Atherton, of Frings, Bagley, Atherton & Clark, of Pekin, for petitioner.

Tyrone C. Fahner, Attorney General, of Springfield (Michael Paschon and John Brunsman, Assistant Attorneys General, of counsel), for respondent J. Thomas Johnson.

Thomas J. Homer, State's Attorney, of Lewiston (James Lloyd, Special Assistant State's Attorney, of Canton, of counsel), for respondents Vernon Thompson *et al.*

James L. Donnelly, Jr., and Wayland B. Cedarquist (Boodell, Sears, Sugrue, Giambalvo & Crowley, of Chicago, of counsel), for *amicus curiae* Illinois Manufacturer's Association.

Laurence D. Lasky, Paul F. Hanzlik, William P. Suriano, and John W. Treece, of Isham, Lincoln & Beale, of Chicago, for *amicus curiae* Commonwealth Edison Company.

Brent S. Bohlen, of Springfield, for *amicus curiae* Taxpayers' Federation of Illinois.

Froehling, Taylor & Weber, of Canton, for *amicus curiae* Canton Union School District No. 66.

Frederic S. Lane, Ralph E. Loomis, and Thomas W. Dressler, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago; Charles R. Zalar, State's Attorney, of Morris; and Eugene W. Hayes, of Dunn & Hayes, of Morris, for *amici curiae* Certain Zion Township (Lake County) and Grundy County Taxing Bodies and Assessing Officials.

MR. JUSTICE WARD delivered the opinion of the court:

In February of 1980, the Department of Revenue and the supervisor of assessments of Fulton County reclassified as real property certain machinery and equipment of the Central Illinois Light Company (CILCO) that had been previously assessed for purposes of taxation as personalty

by both of the governmental bodies.

In response, CILCO filed a motion in this court for leave to file an original action "relating to revenue" under Supreme Court Rule 381 (73 Ill. 2d R. 381), in which it petitioned for declaratory and injunctive relief. We granted the motion for leave to file the action.

The petitioner is a privately owned public utility engaged in producing, transmitting and distributing electrical energy. Duck Creek Station, a steam electrical generating facility located in Fulton County, is one of several plants owned and operated by CILCO. Duck Creek Station began operations in 1974. For that year and for succeeding years, CILCO filed certain schedules with the Department of Local Government Affairs on the basis of which that department classified and assessed the utility's pollution-control equipment as personal property. The assessments were then forwarded to the Fulton County supervisor of assessments and used as a basis for the county's classifying, assessing, and taxing of property at Duck Creek Station, that was subject to *ad valorem* personal and real property taxes.

The statutory quadrennial assessment of property in Fulton County was scheduled for 1975, and in anticipation of it CILCO and the county's supervisor of assessments, Vernon Thompson, agreed that the following formula would be applied in assessing CILCO's property at its Duck Creek Station: 60% of the property would, for purposes of taxation, be considered to be personal property and 40% would be considered to be real property and so assessed, based on 25% of the actual book cost of all the property located at the Duck Creek Station. The agreement, however, did not identify each item of property listed on property schedules as being real or personal. The personal property taxes imposed on the Duck Creek Station property were based upon the valuations assigned by CILCO to its machinery and equipment. A letter

directed by CILCO to Fulton County officials confirming this assessment arrangement included the statement: "This classification will be subject to review and possible adjustment when the effect of the abolition of personal property taxation on or before January 1, 1979 on the amount of property or replacement taxes paid by CILCO to Fulton County is known."

The Fulton County taxing officials followed the 60%/40% assessment formula for the years 1975 through 1978. As stated, the assessments for the personal property taxes were based upon CILCO's declared value of its machinery and equipment at Duck Creek, which were itemized in personal property schedules and filed with the county.

After the abolition of the *ad valorem* tax on personal property (see *Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 308), Fulton County, in preparation for the 1979 quadrennial assessment, for the first time conducted an on-site inspection at Duck Creek for the purpose of determining the value of the real and personal property at the facility. The Real Estate Analysis Corporation, which had been retained by the county to conduct the inspection, gave an appraisal of $206,939,000. Machinery and equipment accounted for approximately $120 million of the valuation, and the structural improvements, reservoirs, and dams were appraised at $86.4 million.

On February 8, 1980, after the abolition of the personal property tax, the Fulton County board of review reclassified all of the property at Duck Creek as realty, including CILCO's machinery and equipment which had previously been assessed and taxed as personal property. This action came after the Department of Revenue had acted to reclassify CILCO's pollution-control equipment at Duck Creek as real property for the purpose of taxation. As a result of Fulton County's reclassification it was calculated that the county would derive an additional $1.7 million

from the real property tax imposed on CILCO's machinery and equipment at the Duck Creek Station.

To support this reclassification, the respondents point to the Illinois Property Tax Manual, which was prepared by the Department of Revenue in 1980 as "a guide to all local officials that are involved in administering the Illinois Property Tax System." It was published in compliance with statutory directions to the Department to "[p]rescribe general rules and regulations, not inconsistent with law, for local assessment officers relative to the assessment of property for taxation, which general rules and regulations shall be binding upon all local assessment officers and shall be obeyed by them respectively until reversed, annulled or modified by a court of competent jurisdiction." Ill. Rev. Stat. 1979, ch. 120, par. 611(3).

The manual declares that the determination of whether property is to be classified as real or personal is a "matter of law." It states, too:

"If the Revenue Act, as it existed on January 1, 1979, specified that a certain kind of property shall be considered personal property for purposes of taxation then the assessor must rely on that specification. Property that has been statutorily classified as personalty as of January 1, 1979, cannot be reclassified as real estate. In those cases where no rule is provided by statute, the determination of whether a particular property shall be considered real or personal shall be made from a consideration of the distinguishing characteristics of real and personal property."

The petitioner acknowledges that there is no provision in the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 482 *et seq.*) which specifies or requires that "machinery and equipment" be considered to be personalty. The manual does set out various characteristics as a guide to what is to be considered "real estate." One of those provisions, and one upon which the Department of Revenue and Fulton County relied in reclassifying CILCO's machinery and equipment at Duck Creek Station as real property,

is the following:

> "If machinery is intended for permanent use in carrying on the business for which the building was erected or is used, it becomes part of the realty on being installed and it is immaterial that the machines may be removed without injury to the building. This rule has special application to heavy machinery intended for the building and not intended to be moved from place to place, though resting in position by its own weight, and to machinery which is part of a factory or shop and indispensable thereto, though not actually fastened."

If this guide or rule is to be applied uniformly across the State, the parties say "virtually all property classified as machinery and equipment for personal property tax purposes and owned by public utilities and others in 1970 and 1978 will be subject to *ad valorem* taxes as real property in 1979 and later years."

CILCO contends that the rule referred to in the manual is not applicable because under the terms of section 18.1 of the Replacement Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 499.1) reclassification of the machinery and equipment at the Duck Creek Station as real property is prohibited. That portion of section 18.1 which is relevant here provides:

> "No property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979. No property lawfully assessed and taxed as real property under this Act prior to January 1, 1979, shall be classified as personal property subject to assessment and taxation after January 1, 1979." (Ill. Rev. Stat. 1979, ch. 120, par. 499.1.)

The petitioner declares that its machinery and equipment at Duck Creek were "lawfully assessed and taxed" as personal property prior to January 1, 1979, and that reclassification is prohibited, unless the original classification was fraudulent.

Fulton County contends that the agreement with

CILCO under which the petitioner's property at Duck Creek was assessed as being 60% personal property and 40% real property, while not fraudulent, was unlawful within the meaning of section 18.1. The county claims that this ratio of assessment was improper because it was applied to only 25% of the book value of the property at Duck Creek rather than 33 1/3%, which it says was required by statute (Ill. Rev. Stat. 1979, ch. 120, par. 501(1)).

The Department of Revenue, which in 1979 initially reclassified CILCO's machinery and equipment as realty, acknowledges that it erred in doing so. The Department now agrees with CILCO that, under section 18.1 of the Replacement Tax Act, the petitioner's machinery and equipment at Duck Creek were lawfully assessed and taxed as personal property prior to January 1, 1979, and therefore could not now be reclassified as realty. The Department declares, however, that any new machinery or equipment or other property acquired after January 1, 1979, and which falls under the statutory or common law definition of real property will be subject to the *ad valorem* tax on real property. Similarly, the Department states that any new utility construction completed after January 1, 1979, should be considered as real property, assuming of course that the property falls within the legal definition of real property. These contentions are disputed by the petitioner. It says, *inter alia,* that such action by the Department or the county would be illegal as converting the Replacement Tax Act into a "prohibited revenue generating measure." These contentions and countercontentions are, however, for another day. There has not been an attempt to reclassify by the Department or county any property acquired or constructed by CILCO subsequent to January 1, 1979. As a result, there is no existing controversy, and we will not consider contentions beyond the issue of this case.

The legislative background to the Replacement Tax Act shows an awareness by the legislature of agreements which existed between certain utilities and local taxing officials regarding the classification of property as personal or real and reveals the legislative reasoning underlying section 18.1. Illustrating, in response to a question by Senator Adeline Geo-Karis as to whether section 18.1 would place any restrictions upon county assessors with respect to the classification of property as real or personal, Senator Terry Bruce responded:

> "Yes, it has, Senator Geo-Karis ***. [C]oncern was expressed by many in the House and an amendment was added which clarifies *** that property that was legally classified in prior years cannot be reclassified, and frankly that works both ways. Some assessors would give utilities a break if it were assessed as real property as opposed to personal property, some would give the break if it were personal rather than real. And now some utility companies seeing that they would not have to pay any taxes if they could get it reclassified quickly to personal property and not as real property, wouldn't pay. The decision was made that the best thing is to freeze everybody with the deals that they've made with their local assessor. If they went to them and said, look, let's assess this as personal property so I can get a lower rate, that's fine, they're stuck with that and now they're off the rolls. If they went through in the other way and said, let's classify it as real estate and they enjoyed that advantage for several years at a lower rate than the personal property tax rate, I don't think it would be fair now to allow them to change that. So the bill just says, if it were legally classified prior to the enactment of this bill, it cannot be reclassified."

It is clear it was the legislature's intent through section 18.1 to "freeze" classifications of property that had been made by assessing officials pursuant to agreements such as that involved here.

This court has consistently held that the assessment of property is not a judicial function but a legislative one, the propriety of which courts will not review absent

charges that the assessment was a product of fraud. (See *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 323; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05; *People ex rel. Joseph v. Schoenborn* (1968), 41 Ill. 2d 302, 304; *People ex rel. Frantz v. M.D.B.K.W., Inc.* (1966), 36 Ill. 2d 209, 211.) None of the parties contend that fraud was involved in the agreement in 1974 as to the classification and valuation of CILCO's Duck Creek Station. We, accordingly, hold that property of CILCO at the Duck Creek Station, which was classified and taxed as personalty prior to January 1, 1979, may not, under the Replacement Tax Act, now be reclassified as real property for purposes of taxation. (Ill. Rev. Stat. 1979, ch. 120, par. 499.1.) If there was in fact a variance from the terms of the statute in the assessment, as Fulton County states, we do not consider it would affect this holding. The property was assessed and taxed as personal property. This was the fundamental consideration, and under section 18.1 the property cannot now be reclassified. We would add, parenthetically, that it was Fulton County itself that made the 25% assessment and that this assessment was made not only in CILCO's case but apparently generally throughout the county.

For the reasons given, the respondents are permanently enjoined from reclassifying the property involved as real property for purposes of taxation.

*Injunction entered.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.