THE PEOPLE *ex rel.* KENT BOSWORTH, County Treasurer, Plaintiff-Appellant, *v.* EARL LOWEN *et al.*, Defendants-Appellees—(Valley View Community Unit School District No. 365U, Will County, Intervening Appellant).

Third District   Nos. 82—332, 82—257, 82—304, 82—305, 82—330, 82—331 cons.

Opinion filed June 14, 1983.

Edward Petka, State's Attorney, of Joliet, and Barry L. Moss and George A. Marchetti, both of Moss and Bloomberg, Ltd., of Bolingbrook, for appellants.

Murphy, Timm, Lennon, Spesia & Ayers, and Herschbach, Tracy, Johnson, Bertani & Wilson, both of Joliet, for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

This appeal is from summary judgments entered in three tax objection proceedings in Will County circuit court, ordering tax refunds to Commonwealth Edison for the years 1977, 1978, and 1979 in a total amount of $2,601,267.92. Edison was found to be entitled to the refunds as a result of the downward revisions in the assessments of its pollution control facilities as certified by the Department of Revenue.

The assessment of pollution control facilities for property tax purposes was governed by sections 21a—1 and 21a—3 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, pars. 502a—1, 502a—3), which required the Department of Revenue to value such facilities in relation to their economic productivity to their owners. In the case of public utilities, such as Edison, the Department used the present cash value of the pollution control facilities as the basis for valuation since those facilities were included in the rate base from which Edison's rates were determined and, therefore, were considered to be economically productive.

Edison paid its Will County property taxes under protest for each of the years 1977, 1978, and 1979, and then filed timely tax objections, asserting that the valuations certified by the Department of Revenue were erroneous. While these tax objection proceedings were pending in Will County, Edison was pursuing its administrative remedies against the Department in Cook County. That case reached the supreme court, where the court ruled the 1979 amendment to section 21a—3 of the Revenue Act of 1939 to be applicable to assessments in prior years. The amendment required attribution of earnings to a pollution control facility only to the extent the facility produces a commercially saleable byproduct or affects the cost of products or services

sold by the utility. (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495, 426 N.E.2d 817.) As a result of that decision, the Department issued new assessment figures for Edison's Will County pollution control facilities for the years 1977, 1978, and 1979.

The revised assessments for 1977 and 1978 for both personal and real property were computed on the basis of 1.5% of fair cash value equalized at 33⅓%, *i.e.*, .5%. The 1979 assessments of real property were similarly reduced to .5%, and certain electrostatic precipitators were reduced to zero valuation. The latter had been improperly classified as realty in 1979 after being classified as personalty in prior years. While the tax objections were pending, the supreme court held that under section 18.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 499.1), it was improper to change personal property to a classification of real property after the abolition of the personal property tax. (*Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, 418 N.E.2d 696.) Thus, when the Department of Revenue recertified the Edison assessments, the improper reclassification of this property was corrected by giving it a valuation of zero.

After the recertification of assessments by the Department of Revenue, Edison filed motions for summary judgment accompanied by affidavits in all the pending tax objection proceedings in Will County. In the meantime, Valley View Community Unit School District had been allowed to intervene in these proceedings, and the county treasurer joined with the school district in filing motions to dismiss the tax objections. After hearing arguments of counsel and receiving briefs, the circuit court denied the motions to dismiss and granted summary judgments in favor of Edison. The county treasurer and the school district have appealed from those rulings.

■ The first question raised upon appeal is, in essence, whether section 21a—3 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 502a—3) is unconstitutional by its terms. The policy of the statutory provisions is set forth in section 21a—1 of the Revenue Act of 1939, as follows:

> "It is hereby declared to be the policy of the State of Illinois that pollution control facilities should be valued, for purposes of the real and personal property tax laws of this State, in relation to 33⅓% of the fair cash value of their economic productivity to their owners." Ill. Rev. Stat. 1981, ch. 120, par. 502a—1.

Section 21a—3 as originally enacted (see Ill. Rev. Stat. 1977, ch. 120, par. 502a—3) provided the following method of valuation of pollu-

tion control facilities:

"For the purpose of determining 33⅓% of the fair cash value of any certified pollution control facilities in assessing said facilities under the real and personal property tax laws of this State, the Department shall take into consideration the actual or probable net earnings attributable to the facilities in question, capitalized on the basis of their productive earning value to their owner; the probable net value which could be realized by their owner if the facilities were removed and sold at a fair, voluntary sale, giving due account to the expense of removal and condition of the particular facilities in question; and such other information as the Department may consider as bearing on 33⅓% of the fair cash value, to their owner, of the pollution control facilities in question, consistent with the principles set forth herein."

The 1979 amendment to section 21a—3 added the following language after the above:

"For the purposes of this Act, earnings shall be attributed to a pollution control facility only to the extent that the operation thereof results in the production of a commercially saleable byproduct or increases the production or reduces the production costs of the products or services otherwise sold by the owner of such facility. For the purposes of this Section the land underlying a cooling pond shall not be considered a part of a pollution control facility.

This amendatory Act of 1979 is not intended to nor does it make any change in the meaning of any provision in this Section but is intended to remove possible ambiguities, thereby confirming the existing meaning of this Section in effect prior to the effective date of this amendatory Act of 1979." Ill. Rev. Stat. 1979, ch. 120, par. 502a—3.

The appellants argue that section 21a—3 violates the uniformity requirement of the Illinois Constitution, which states:

"Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, sec. 4(a).)

The main thrust of appellants' argument seems to be that pollution control facilities are just as financially profitable to investors as any other type of facility owned by a public utility since the value of the pollution control facility is included in the rate base. It is argued that, because of the special nature of public utility rate determination, the

value of pollution control facilities generates income for the utility, and to fail to consider those revenues when determining the valuation of such facilities is a failure to comply with the uniformity provision of the constitution.

It seems clear that pollution control facilities and equipment are not usually economically productive in and of themselves. They represent an additional economic burden upon manufacturers and processors which is required because of the environmental necessity of reducing the discharge of pollutants into our air and water. All industries where the rates and prices are not subject to administrative determination would, therefore, exclude pollution control facilities from their tax valuation. It is only public utilities, where special methods of setting rates and prices prevail, that would be required to pay property taxes based upon the fair cash value of their pollution control facilities under the original Department of Revenue interpretation of the section 21a—3 prior to the 1979 amendment.

It is our view that section 21a—3 as amended provides for all pollution control facilities to be treated in a uniform manner for tax purposes, regardless of the rate-making and price-setting practices of the industry, and hence, that the statute does not violate the uniformity requirements of the Illinois Constitution.

■ Appellants have also argued that section 21a—3 amounts to an unconstitutional classification because it results in a disparity between the highest level of assessment and the lowest class of more than the 2½ times permitted by the Illinois Constitution. The constitutional provision referred to is section 4(b) of article IX (Ill. Const. 1970, art. IX, sec. 4(b)), as follows:

"Subject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify or continue to classify real property for purposes of taxation. ***. The level of assessment or rate of tax of the highest class in a county shall not exceed two and one-half times the level of assessment or rate of tax of the lowest class in that county."

As is clear from the plain language of section 4(b), the limitation upon levels of assessment between classes only applies to classifications made by *county* assessment officials, and does not apply to classifications created by action of the General Assembly. (See *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74.) Thus, section 21a—3 of the Revenue Act of 1939 is not invalid under limitation provision of article IX, section 4(b), of the Illinois Constitution of 1970.

■ Appellants also assert that section 21a—3 amounts to an un-

constitutional exemption of pollution control facilities from real property taxation. This assertion is based upon the statement in *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 327, 369 N.E.2d 465, 468, that a "valuation reduction is a partial exemption, and if the value was reduced to zero, it would be a full exemption." In *Lehnhausen,* the supreme court was considering a provision of the Revenue Act of 1939 which provided for a "homestead exemption limited to a $1,500 maximum reduction" in the assessed valuation of real property occupied as a residence by a person 65 years of age or older. (Ill. Rev. Stat., 1970 Supp., ch. 120, par. 500.24.) The court expressly rejected the argument that the homestead exemption was merely a property valuation reduction rather than an exemption.

In *Lehnhausen* the statute used the word "exemption" and provided for a fixed dollar amount of valuation of residential property to be exempt from taxation. A similar situation arose in another case relied upon by appellants. In *Elk Grove Engineering Co. v. Korzen* (1973), 55 Ill. 2d 393, 304 N.E.2d 65, the court held unconstitutional a provision of the Revenue Act of 1939 which would have allowed every taxpayer a standard deduction of $5,000 from the assessed valuation of his or her personal property. (Ill. Rev. Stat., 1972 Supp., ch. 120, par. 532.1.) Again the court rejected the argument that the deduction provision was not an exemption but was a method for determining the valuation of property subject to taxation.

We think it clear that the case at bar is substantially different in its terms from those statutes which provided for a fixed-dollar amount to be deducted from assessed valuation. Under the statutes involved in both *Lehnhausen* and *Elk Grove,* an assessed valuation was determined for each type of property and then that valuation was to be reduced by a fixed-dollar amount. Such is not the case here. Section 21a—3 purports to set forth the *means* for determining the fair cash value of pollution control facilities on the basis of their economic productivity. By the terms of the statute, the assessed valuation will be determined by certain factors which may well differ from one facility to another. Some facilities may produce a saleable byproduct or may otherwise have net earnings attributable to them. Certainly no fixed-dollar reduction in valuation can be anticipated under the provisions of section 21a—3.

The section here in dispute more closely resembles the statutory provisions which were upheld in *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204. Section 1(25) of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 482(25)) defined "farm" for purposes of tax valuation and provided that improvements on the

farm that are neither currently in use nor contribute towards the productivity of the farm are not to be included in the valuation. This provision was challenged as an unconstitutional exemption from taxation. The Illinois Supreme Court, speaking through Justice Howard Ryan, said:

"We do not agree that this provision constitutes an 'implied exemption of property from taxation.' It is, instead, a recognition by the legislature that certain structures located on a farm may have become obsolete by changes in farming methods or practices, and either have a greatly diminished value, or possibly no value at all in connection with the farming operation when considered as a part of the farm as a whole. ***. The legislature has provided that these buildings should be valued on the basis of their contribution to the farm operation. ***. Being valued as a part of the farm, the failure to place a value on these buildings is a method or procedure of valuation and not an exemption from taxation." (81 Ill. 2d 260, 267-68, 408 N.E.2d 204, 207.)

We believe the same conclusion applies to section 21a—3, which like that in *O'Connor,* sets forth a method or procedure of valuation in order to determine the taxable value based upon the economic productivity of the facility. The pollution control facility is valued as a part of the plant as a whole and is valued on the basis of its productive earning value in the plant operation. Accordingly, we hold that section 21a—3 does not create a constitutionally impermissible exemption from property taxation.

■ The next issue on appeal is whether section 21a—3 is unconstitutional as applied to the property of Commonwealth Edison in this case. Appellants state in their briefs that they are attacking section 21a—3 in its terms, not as applied, but appellants' insistence that this statute is invalid as to public utilities demonstrates the inconsistency of their position. To the extent that appellants are challenging the propriety of the assessed valuations determined for the pollution control facilities of Commonwealth Edison in this case, they are challenging the statute as applied. However, we must first consider Edison's defense: whether the county collector and the taxing bodies were required to exhaust their administrative remedies before seeking review in the courts. Administrative review is provided for in sections 137 and 138 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, pars. 618, 619). It has been held:

"If a statute is valid on its face but is applied in a discriminatory or arbitrary manner *** the challenging party must pur-

sue administrative remedies before seeking judicial relief." *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552, 359 N.E.2d 113, 117.

As noted by the supreme court in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737, the pursuit of administrative remedies allows the full development of the facts before the agency, allows the agency an opportunity to exercise its expertise, and if the aggrieved party succeeds, judicial review will be unnecessary. Certainly it is essential that the facts be fully developed on the record where it is claimed, as here, that the statute as applied violates constitutional rights. Here appellants have argued that the statute virtually eliminates all valuation of pollution control facilities, but the record contains no evidence to support that contention. The fact that the valuations of the particular facilities in this case have been reduced from 33⅓% to .5% may or may not be unusual for this type of facility. To say that the valuation attached is not proper here certainly requires supporting evidence before a court could invalidate the value placed upon this property by the appropriate assessment authorities. We conclude, therefore, that appellants were required to exhaust their administrative remedies before raising the issue of the constitutionality of section 21a—3 as applied in this case.

■ The final error asserted by appellants concerns the reclassification of certain equipment as non-taxable personal property by the Department of Revenue. The equipment involved were electrostatic precipitators and dust handling units which had been assessed as personal property for the tax years 1977 and 1978 and which were reclassified as real property for 1979 at the time the original Commonwealth Edison assessments were certified to Will County. When the Department recertified the corrected assessments for the years 1977, 1978, and 1979, the equipment was once again shown as personal property for all three years. For the year 1979, this personalty was given a tax valuation of zero since the personal property tax had been abolished pursuant to the 1970 Constitution of Illinois, article IX, section 5(c).

The Department relied upon section 18.1 of the Revenue Act of 1939, also known as the Replacement Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 499.1), which provided in part:

"No property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979."

The statute was amended in 1982 by Public Act 82—935 to add a pro-

hibition of property of like kind acquired or placed in use after January 1, 1979, from being classified as real property. This statute also provides that the personal property tax has been replaced by increases in the corporate income tax rates and by the invested capital tax which applies to public utilities.

The Replacement Tax Act was considered by the Illinois Supreme Court in *Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, 418 N.E.2d 696, where certain machinery and equipment had been reclassified for 1979 as real property after previously being assessed pursuant to agreement with the owner as personalty. The court stated:

"It is clear it was the legislature's intent through section 18.1 to 'freeze' classifications of property that had been made by assessing officials pursuant to agreements such as that involved here.

The court has consistently held that the assessment of property is not a judicial function but a legislative one, the propriety of which courts will not review absent charges that the assessment was a product of fraud. [Citations.] None of the parties contend that fraud was involved in the agreement in 1974 as to the classification and valuation of CILCO's Duck Creek Station. We, accordingly, hold that the property of CILCO at the Duck Creek Station, which was classified and taxed as personalty prior to January 1, 1979, may not, under the Replacement Tax Act, now be reclassified as real property for purposes of taxation." 84 Ill. 2d 275, 282-83, 418 N.E.2d 696, 699-700.

Appellants contend that the holding in *CILCO* that the classification of property was "frozen" is limited to those cases where the assessing officials had entered into an agreement before 1979 with the owner of the property as to the classification of particular property. We do not agree. We think the statutory language is perfectly clear that property which was lawfully classified as personal property before January 1, 1979, cannot be reclassified as real property after that date, whether the original classification was by agreement of the parties or not.

Appellants argue that the decisions in *Ayrshire Coal Co. v. Property Tax Appeal Board* (1974), 19 Ill. App. 3d 41, 310 N.E.2d 667, and *Cherry Bowl, Inc. v. Property Tax Appeal Board* (1981), 100 Ill. App. 3d 326, 426 N.E.2d 618, authorize judicial review of assessment classifications each tax year, and that the test for classification as real property is whether the machinery is essential to the proper function-

ing of the plant, that is the "integrated industrial plant" doctrine. Neither *Ayrshire Coal* nor *Cherry Bowl* involved application of the Replacement Tax Act, and more importantly, both involved judicial review of administrative proceedings. Consequently, the case at bar can be distinguished on both grounds.

Appellants insist that the classification of Commonwealth Edison's equipment as real property was correct according to the integrated industrial plant doctrine; however, the question here is whether the classification of this machinery as personal property prior to January 1, 1979, was lawful. There is nothing in the record before this court to indicate that the original classification of the equipment in question was unlawful. Since appellants did not pursue their administrative remedies to challenge the action of the Department, there is no factual basis for considering the lawfulness of classifying this property as personal property. In the absence of a showing that the original classification was fraudulent or otherwise unlawful, the Department was in violation of the Replacement Tax Act in attempting to reclassify the property as real property. The second reclassification which returned the machinery to its original classification as personalty was, therefore, proper.

For the reasons stated, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER and HEIPLE, JJ., concur.