THE COUNTY OF WHITESIDE *et al.*, Appellants, v. THE PROPERTY TAX
APPEAL BOARD *et al.*, Appellees.

Third District   No. 3—94—0373

Opinion filed November 15, 1995.

BRESLIN, J., dissenting in part.

Robert A. Kohn, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, of Arlington Heights (Heather K. Brickman, of counsel), for petitioners.

Michael F. Baccash, of Sarnoff & Baccash, of Chicago (Robert M. Sarnoff, of counsel), for respondent Northwestern Steel and Wire Company.

James E. Ryan, Attorney General, of Chicago (Jerald S. Post, Assistant Attorney General, of counsel), for respondent Property Tax Appeal Board.

JUSTICE SLATER delivered the opinion of the court:

Appellee Northwestern Steel and Wire Company (Northwestern) filed complaints with appellant Whiteside County Board of Review challenging the assessed valuation of Northwestern's property for tax years 1988, 1989 and 1990. The board of review denied the requested relief and Northwestern appealed to the Illinois Property Tax Appeal Board (the Appeal Board or Board). The remaining appellants, consisting of various taxing districts, intervened on the side of the board of review. Following an evidentiary hearing, the Appeal Board ruled in favor of Northwestern and granted assessment reductions. The board of review and the taxing districts (hereinafter collectively called the taxing districts) now appeal, raising several issues. For the reasons stated below, we affirm in part, reverse in part and remand for further proceedings.

OVERVIEW

Northwestern operates a so-called "mini-mill" which produces steel from scrap metal. A mini-mill differs from an integrated steel facility, which makes steel from iron ore. The mill is situated on 645 acres of land, with approximately 311 acres utilized as farmland and 334 acres used for manufacturing. One hundred and forty-five buildings are located on the property, ranging in size from 11 to 883,366 square feet, and totaling 4,198,576 square feet of building area. These buildings house various types of machinery and equipment which are used in the steel manufacturing process. The Appeal Board assessed the value of the property as $18,150,000. The taxing districts' expert, on the other hand, appraised the property in a preliminary report at an estimated value of $34 million to $45 million.

THE "LIKE KIND" ISSUE

We first consider the taxing districts' contention that the Appeal Board erred in finding that certain machinery and equipment installed after January 1, 1979, were of "like kind" to the machinery and equipment in use prior to that date. The result of this finding was that the post-1979 machinery was classified in the same manner as the pre-1979 machinery, which had been classified as personal property. The taxing districts contend that the Appeal Board misinterpreted the like kind provision. We disagree.

█ Section 18.1 of the Revenue Act of 1939 provides in part:

"§ 18.1. Notwithstanding the provisions of this or any other Act, an ad valorem personal property tax shall not be levied after January 1, 1979, on any personal property having tax situs in this State, provided that this Section shall not prohibit the collection after January 1, 1979 of any taxes levied under this Act prior to January 1, 1979, on personal property subject to assessment and taxation under this Act prior to January 1, 1979. *No property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, [or property of like kind acquired or placed in use after January 1, 1979,] shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979.* No property lawfully assessed and taxed as real property under this Act prior to January 1, 1979, [or property of like kind acquired or placed in use after January 1, 1979,] shall be classified as personal property subject to assessment and taxation under this Act after January 1, 1979." (Emphasis added; brackets added.) 35 ILCS 205/18.1 (West 1992) (repealed by Pub. Act 88—455, eff. January 1, 1994, and re-enacted as amended as 35 ILCS 200/24—5 (West 1994)).

This section, enacted in 1979, abolished *ad valorem* personal

property taxes, as mandated by the Illinois Constitution. (See Ill. Const. 1970, art. IX, § 5(c).) In addition, section 18.1 was intended to "freeze" the classification of property as either real or personal, depending upon its classification prior to 1979. (*Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, 418 N.E.2d 696.) In 1983, section 18.1 was amended by inserting the bracketed phrase "or property of like kind acquired or placed in use after January 1, 1979," as indicated above. (Pub. Act 82—935, eff. January 1, 1983.) Thus, the amended section 18.1 "froze" not only pre-1979 property as real or personal, but also any other property of "like kind" subsequently acquired.

The property at issue in this case includes two continuous casters, a jumbo caster, a metallurgical furnace, a furnace ladle injection system, a 12-inch rod and bar mill, a computerized roll lathe, cleaning room equipment and nail packaging equipment. All of this property was acquired or placed in use after January 1, 1979. The Appeal Board first noted that the new equipment represented technological advancements that replaced older equipment. The Board then found that the testimony of Gerald Shinville, vice-president of quality assurance and technology for Northwestern, Edmund McIntyre, an engineer, and Joseph Pataki, also an engineer, indicated that the machinery installed after 1979 performed the same function and produced the same products more efficiently and with superior quality than the equipment it replaced. The Appeal Board also found that the newer equipment had similar portability and was attached to the structures in a similar manner as the old. In ruling that the post-1979 equipment was of like kind to Northwestern's pre-1979 equipment, the Appeal Board stated that the purpose of section 18.1 was to prohibit the reclassification of new or replacement machinery to give businesses a sense of certainty that replacing older equipment with efficient new technology would not result in an increased tax burden and a loss of competitive advantage.

The taxing districts assert that the Appeal Board's interpretation of the like-kind standard is overly broad and results in labeling *any* new equipment used in the manufacture of steel as like kind "despite any dissimilarities, however radical, in technology, nature, sophistication, function, or process, because it would provide the same function of contributing to the production of steel." The taxing districts suggest that a more reasonable interpretation of the like-kind standard would exclude any machinery or equipment which, due to technological advances or other reasons, performs a different function or utilizes a different process to perform the same function as comparable pre-1979 equipment.

■ It is well established that courts must give substantial weight and deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. (*Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 508 N.E.2d 1058.) Such deference is appropriate because of the agency's ability to make informed judgments based upon its experience and expertise. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) While a court is not formally bound by an agency's interpretation of law (*Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633, 576 N.E.2d 532), such interpretations express an informed source for ascertaining legislative intent and deserve to be afforded great weight in a court's construction of a statute (*Lake County Board of Review v. Property Tax Appeal Board* (1989), 192 Ill. App. 3d 605, 548 N.E.2d 1129). An agency's construction of a statute is not binding, however, where it is unreasonable or erroneous. *Press v. Code Enforcement Board of Appeals* (1992), 149 Ill. 2d 281, 595 N.E.2d 1068.

■ We find that the Appeal Board's interpretation of the like kind standard was reasonable. Obviously, any commonsense construction of the term "like kind" would require substantial similarities between pre-1979 and post-1979 equipment. In that regard, the Appeal Board relied on several factors, including: (1) performance of the same function; (2) production of the same product; (3) similar portability and manner of attachment; and (4) that the new equipment replaced existing machinery. We believe that those factors are sufficient to establish a like-kind relationship, notwithstanding the differences inherent in advancing technology. In addition, while the Appeal Board's interpretation of the like-kind standard may be broad, it is not as all-encompassing as the taxing districts suggest. The requirement of same function/same product, for example, prevents application of the like-kind exclusion to business activities unrelated to those engaged in before 1979.

We further find that the Appeal Board's determination that one purpose of the like-kind provision was to encourage businesses to modernize without incurring additional tax liability was a reasonable conclusion. During the debates over the like-kind amendment in the Illinois House of Representatives, Representative Ewing, the bill's primary sponsor, stated:

"[W]e are saying that, if it was personal property and taxed that way before 1979, any new property put into service or replaced in the years ahead will not be taxed as real estate. *** [W]e want to keep Illinois and make it an attractive place for business, and this is a very important Bill for new industry; because, if you're plan-

ning on investing millions in what used to be personal property, you don't want to wake up one morning and find it being taxed as real estate. *** [I]t will help our business climate." 82d Ill. Gen. Assem., House Proceedings, April 21, 1982, at 112-13 (statements of Representative Ewing).

We find, therefore, that with the exception of the nail packaging equipment discussed below, the Appeal Board's ruling that Northwestern's post-1979 machinery and equipment were of like kind to the pre-1979 equipment was proper.

## THE NAIL PACKAGING EQUIPMENT

The taxing districts contend that the evidence fails to establish that any nail packaging equipment was acquired or in use prior to 1979, and therefore it cannot be considered like kind. We agree. Gerald Shinville testified that new nail packaging equipment was acquired in 1989 which increased the capacity of the older equipment. Shinville did not state, however, when the "older" nail packaging equipment was purchased. The only indication contained in the record concerning this older equipment is an entry on a list of Northwestern's major capital expenditures which shows that "nail equipment" was purchased in 1982 for more than $3 million. The taxpayer bears the burden of proving that property is exempt from taxation under section 18.1 (*Trahraeg Holding Corp. v. Property Tax Appeal Board* (1990), 204 Ill. App. 3d 41, 561 N.E.2d 1298). Since Northwestern failed to prove that it had any pre-1979 machinery performing the same function as the nail packaging equipment, that equipment is not exempt from taxation under the like-kind provision. We therefore reverse the Appeal Board's finding that the nail packaging equipment was of like kind to the pre-1979 equipment and remand for determination of its status as real or personal property and for valuation, if necessary.

We next consider the taxing districts' argument that the Appeal Board erred in refusing to issue a subpoena requiring Northwestern to grant access to its property to the taxing districts' appraisers. The Appeal Board ruled that it did not have the statutory authority to compel Northwestern to grant access. We agree with the Board.

■ Section 16—170 of the Property Tax Code provides that the Appeal Board "may require the production of any books, records, papers or documents that may be material or relevant as evidence in any matter pending before it and necessary for the making of a just decision." (35 ILCS 200/16—170 (West 1994) (formerly Ill. Rev. Stat. 1991, ch. 120, par. 592.3).) Section 175 states that the chairman of the Appeal Board or his designee may issue subpoenas and may petition

the circuit court to order the appearance of witnesses if the subpoena is disobeyed. (35 ILCS 200/16—175 (West 1994) (formerly Ill. Rev. Stat. 1991, ch. 120, par. 592.3a).) In addition, section 1910.68(a) of the Appeal Board's regulations provides:

> "a) Issuance. Subpoenas shall be issued by the Chairman of the Board or his designee for good cause shown to compel the attendance of a witness or the production of books, records, correspondence, documents, papers or other evidence to facilitate its determination of the correct assessment of any parcel of real property. Good cause shall exist when the documentation which is the subject of the subpoena is in the exclusive possession and control of another party to the appeal and is necessary to a full determination of the issues presented in the appeal before the Board, or when the attendance of a witness who is the subject of a subpoena is necessary to a full determination of the issues presented in the appeal before the Board." 86 Ill. Adm. Code § 1910.68(a) (1994).

■ An administrative agency is a creature of statute which has no inherent or common law powers. (*Rossler v. Morton Grove Police Pension Board* (1989), 178 Ill. App. 3d 769, 523 N.E.2d 927; *Abatron, Inc. v. Department of Labor* (1987), 162 Ill. App. 3d 697, 515 N.E.2d 1336.) Any authority claimed by the agency must arise from express statutory language or be incident to authority conferred by the legislature. (*Abatron*, 162 Ill. App. 3d 697, 515 N.E.2d 1336.) The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Textile Maintenance v. Industrial Comm'n* (1994), 263 Ill. App. 3d 866, 636 N.E.2d 748.

■ We find that the plain language of the statutory sections cited above grants limited powers to the Appeal Board to compel the attendance of witnesses or the production of documents by issuing subpoenas. Nowhere is the Board given the additional authority to force a taxpayer to allow inspection of his property, nor does such authority automatically accompany the subpoena power. (See Black's Law Dictionary 1426 (6th ed. 1990) (subpoena is a command to appear at a certain time and place to give testimony; subpoena *duces tecum* requires production of books, papers or other things).) Indeed, it is evident that when the legislature intends to grant an administrative agency the power to conduct an administrative search it does so explicitly. (See, *e.g.*, 415 ILCS 5/4(c), (d) (West 1994) (granting the Environmental Protection Agency the authority to conduct surveillance and inspection and the "authority to enter at all reasonable times upon any private or public property" for purposes of inspection and investigation).) We hold that the Appeal Board properly denied the taxing districts' request for a subpoena to compel access to Northwestern's property.

Finally, the taxing districts contend that the Appeal Board abused its discretion in denying their June 5, 1991, motion to dismiss. The districts argued in their motion that by denying access to its property, Northwestern had deprived the Appeal Board of information essential to the Board's statutory obligation to establish the fair cash market value of the property. The taxing districts further maintained that Northwestern's conduct violated the taxing districts' statutory right to participate in the tax appeal proceedings in a meaningful way. The districts urged the Appeal Board to exercise its authority under section 1910.69 of the Board's regulations to dismiss Northwestern's appeal as a sanction for its failure to cooperate. The Appeal Board refused, restating its belief that it had no authority to order access to Northwestern's property.

■ Section 1910.69(a) of the Appeal Board's regulations states that the failure of any party to fully comply with all rules or specific requests of the Appeal Board as provided in various sections of the regulations "shall result in the default of that party." (86 Ill. Adm. Code § 1910.69(a) (1994).) As we held above, the powers of the Appeal Board do not include the power to compel access to a taxpayer's property. Therefore, section 1910.69(a) does not authorize dismissal for failure to comply with a demand which the Appeal Board had no authority to make. We find no error by the Board in denying the motion to dismiss.

In summary, we affirm the Appeal Board with respect to the like-kind issue with the exception of the nail packaging equipment. We also affirm the Board's denial of the taxing districts' request for a subpoena and the denial of the motion to dismiss. We reverse the Appeal Board's finding that the nail packaging equipment was of like kind to pre-1979 equipment and remand for further proceedings. We also reverse the Board's denial of the taxing districts' motion for extension to file evidence, and we remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

LYTTON, J., concurs.

JUSTICE BRESLIN, dissenting in part:

In my view, the Property Tax Appeal Board (PTAB) may dismiss an appeal or impose other appropriate sanctions against a landowner based upon the landowner's refusal to provide taxing districts access to its property for the purpose of obtaining an appraisal. I dissent from the majority decision to the extent it holds otherwise.

An administrative agency may exercise not only powers expressly granted to it under its enabling statute, but also any implied powers which are necessary to assist the agency in carrying out the objectives for which it was created. (See *O'Grady v. Cook County Sheriff's Merit Board* (1994), 260 Ill. App. 3d 529, 632 N.E.2d 87.) Neither the Revenue Act of 1939 nor its successor, the Property Tax Code, gives the PTAB the express authority to compel taxpayers to provide taxing bodies access to the subject property for appraisal purposes. Nonetheless, these statutes must be read to impliedly grant the PTAB the authority to take appropriate sanctioning measures in cases where the taxpayer's refusal to grant access to its property impairs the taxing body's ability to develop evidence necessary to prove its case.

The legislature created the PTAB to hear appeals from board of review decisions regarding property tax assessments. (35 ILCS 200/ 16—160 (West 1994).) The PTAB must render its decision in an appeal based upon equity and the weight of the evidence. (35 ILCS 200/ 16—185 (West 1994).) Toward this end, the PTAB is authorized to promulgate rules to ensure that each party has a fair opportunity to present relevant evidence. See 35 ILCS 200/16—170, 16—180 (West 1994).

An interested taxing body has standing to contest the assessed valuation of a property (35 ILCS 200/16—160 (West 1994)) and may intervene in appeals brought by dissatisfied taxpayers (86 Ill. Adm. Code § 1910.60 (1994)). In either case, the taxing body must support its position with "substantive, documentary evidence of legal argument." (86 Ill. Adm. Code §§ 1910.63(b), (d) (1994).) Where an appeal concerns the subject property's market value, proof of market value may consist of an appraisal as of the assessment date. 86 Ill. Adm. Code § 1910.65(c) (1994).

Since taxing bodies appeal or intervene to challenge the accuracy of a property's assessed valuation, they often seek to conduct their own appraisals to disprove the county assessor's figures. In the absence of their own appraisals, taxing bodies may be left with little substantive evidence on which to base a meaningful challenge. This is especially so in cases involving large industrial properties, since the market value of such properties often cannot be ascertained from comparable sales or other evidence apart from an appraisal.

Under the majority decision, a taxpayer may deny a taxing body access to its property for appraisal purposes and thereby obstruct the taxing body from developing evidence favorable to its position. If taxpayers are permitted to act in this manner, the PTAB will be unable to render decisions based upon equity and the weight of the evidence. Such an outcome would be inconsistent with the objectives

sought to be achieved under the Revenue Act of 1939 and the Property Tax Code. Therefore, the only sensible reading of those statutes is that the PTAB has the authority to level appropriate sanctions against a landowner which refuses to grant appraisers access to its property.

It may be argued that taxpayers' privacy rights will be infringed if they are compelled to grant taxing districts access to their property. Privacy rights are not absolute, however, and must be weighed against the rights of taxing districts to exact legislatively mandated taxes based upon accurate property assessments. It seems to me that, in weighing these rights, it is reasonable to subject taxpayers to a limited instruction for appraisal purposes, particularly where it is the taxpayer who puts the value of its property at issue by bringing an appeal. At the very least, if the taxpayer is unwilling to submit to an appraisal, then the taxpayer should forfeit its opportunity to present evidence to the PTAB. This will assure that the PTAB's decision will be grounded upon equity and the weight of the evidence fairly submitted.

For these reasons, I respectfully dissent.